**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

**FOODFIRST GLOBAL**
**RESTAURANTS, INC.** *et al.*,

    **Debtors.**

_____/

CASE NO.: **6:20-bk-02159-KSJ**
**CHAPTER 11**

**Joint Administration Requested**[1]

**Emergency Hearing Requested on or**
**before Wednesday, April 15, 2020**

### EMERGENCY MOTION FOR ORDER AUTHORIZING APPROVAL OF MANAGEMENT AND ACCOUNTING AGREEMENT

  **FoodFirst Global Restaurants, Inc.** ("FoodFirst" or "Debtor"), as debtor-in-possession, by and through its undersigned counsel, and pursuant to 11 U.S.C. §§ 363 and 105(a), moves for an order authorizing the Debtor's approval of the management and accounting agreement contract with BBR Manager, LLC ("BBR"), (the "Motion"). In support, Debtor states as follows:

  1.  On April 10, 2020 ("Petition Date"), Debtor filed a petition for reorganization under Chapter 11 of Title 11 of the United States Code ("Code"); no trustee has been appointed. Debtor continues to operate its business and manage its properties as a debtor-in-possession under §§ 1107 and 1108 of the Code.

  2.  By this Motion, Debtor requests that this Court enter an order authorizing Debtor to enter a management agreement with BBR for the management of the Debtor's property and related accounting services (the "Management Agreement"). A copy of the Management

---

[1] Joint administration requested with the following cases: Food First Global Restaurants, LLC, Case No. 6:20-bk-02159; FoodFirst Global Holdings, LLC, Case No: 6:20-bk-02161; Brio Tuscan Grille of Maryland, Inc., Brio Marlton, LLC, Case No: 6:20-bk-02162; Case No: 6:20-bk-02163-; Brio Tuscan Grille of Baltimore, LLC, Case No: 6:20-bk-02164; Cherry Hill To, LLC, Case No: 6:20-bk-02166; Brio Tuscan Grille of Cherokee, LLC, Case No: 6:20-bk-02165; and Bravo Development of Kansas, Inc., Case No: 6:20-bk-02167.

Agreement is attached as **Exhibit "A"** to the original of this Motion, incorporated herein by reference, and is available for inspection upon request.

## Jurisdiction

3.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The statutory predicate for the relief sought herein is §§ 105(a), § 363 and 1107 of the Code.

## Background

5.     FoodFirst is a privately held Ohio corporation created in May of 2018. At the filing of the petition, FoodFirst owns and operates nearly one hundred Italian themed restaurants across the country under the Brio or Bravo name, (the "Restaurants"). Brio is positioned within the upscale casual dining market, while Bravo is marketed toward the core casual dining market. However, only twenty-one continue to operate with the remainder temporarily closed pending a final determination whether to reopen. It is likely those not currently operating will remain closed.

6.     As detailed in the Case Management Summary filed contemporaneously with this Motion, the Restaurants went through a period of expansion and contraction. (Doc. No. 5). In 2018 FoodFirst took the Restaurants private so that leadership could focus on rebuilding the brands and improve profitability. The innovations did not yield sufficient improvements, and leadership made the difficult decision to begin reducing the Restaurants' footprint.

7.     The current international health crisis, (the "Pandemic"), creating massive restaurant closings and employee losses throughout the country via state ordered shelter-in-place

requirements, exacerbates the need to further reduce the Restaurants' footprint in order to maintain the strongest and most viable locations. The Pandemic also requires the Restaurants take a different approach in providing a dining experience since States across the country are requiring dining establishments remaining open provide curbside or take-away food options, ("Take-Out"), instead of the traditional sit-down experience.

## **Relief Requested**

8.      In the Debtor's business judgment, the Management Agreement provides an optimal path to continue operations while Debtor pursues a going concern sale of its assets.

9.      Under the Management Agreement, BBR will perform the management, administration, and operation of the day-to-day corporate and management activities of the Restaurants. These include, among other services more detailed in the Management Agreement, the following services: menu development, licensing, permitting, hiring, training, maintenance, quality control, marketing, accounting, information technology, and compliance with food safety and other laws as required. BBR will provide financial and accounting services, including payroll, tax, bookkeeping, accounts receivable, and accounts payable. It will further operate and maintain all store level business systems including telephone and cable, arrange for furnishing of utilities, maintenance, and other services as necessary and appropriate.

10.     BBR is an affiliate of Earl Enterprises set up to enter the Management Agreement. Overall, Earl Enterprises is currently managing over 200 take out restaurant locations and has significant experience in the restaurant industry.  Accordingly, the Management Agreement will provide substantially more expertise in Take-Out services.  By using existing Debtor employees combined with existing Earl Enterprises employees and practices of Earl Enterprises, BBR can more efficiently and effectively guide operations during an unprecedented crisis.  The monthly

management fee of $500,000 is about $100,000 less than the amount expended per month in 2019 for similar services.

11.     In addition to potential cost savings, the Management Agreement will provide a greater breadth of experience of managing during this crisis to allow Debtor to successfully complete a going-concern sale.

**WHEREFORE**, FoodFirst Global Restaurants, Inc., respectfully requests that this Court enter an Order authorizing Debtor to enter the Management Agreement with BBR Manager, LLC, and granting further relief as is just and proper.

**RESPECTFULLY SUBMITTED** this 10th day of April 2020.

/s/ John B. Dorris
**R. Scott Shuker, Esq.**
Florida Bar No. 0984469
rshuker@shukerdorris.com
**Mariane L. Dorris, Esq.**
Florida Bar No. 173665
mdorris@shukerdorris.com
**John B. Dorris, Esq.**
Florida Bar No. 0098158
jdorris@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Ave., Suite 1120
Orlando, Florida 32801
Telephone: 407-337-2060
Facsimile:  407-337-2050
*Attorneys for the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                                                CASE NO.:   6:20-bk-02159-KSJ
                                                                       CHAPTER 11

**FOODFIRST GLOBAL**
**RESTAURANTS, INC.** *et al.,*                       **Joint Administration Requested**

                              **Debtors.**                   **Emergency Hearing Requested on or**
_____/          **before Wednesday, April 15, 2020**

<u>CERTIFICATE OF SERVICE</u>

    **I HEREBY CERTIFY** that a true copy of the foregoing **DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING APPROVAL OF MANAGEMENT AND ACCOUNTING AGREEMENT** has been furnished either electronically or by facsimile and by U.S. First Class, postage prepaid mail to: Debtor c/o Steven R. Layt, 420 S. Orange Ave., Suite 900, Orlando, FL 32801; Mr. Ron Freed, Ron.Freed@cnb.com, City National Bank, 555 South Flower Street, 24th Floor, Los Angeles, CA 90071; Mr. Matthew White, mwhite@garrisoninv.com, Garrison Loan Agency Service, 1290 Avenue of the Americas, Suite 914, New York, NY 10104; all parties entitled to receive CM/ECF noticing; the twenty largest unsecured creditors as shown on the matrix attached to the original of this certificate filed with the Court; and the U.S. Trustee's Office, 400 W. Washington St., Ste. 1120, Orlando, FL 32801, this 10th day of April 2020.

                                    /s/ John B. Dorris
                                      John B. Dorris, Esq.

# EXHIBIT "A"

## MANAGEMENT AGREEMENT

**THIS MANAGEMENT AGREEMENT** (this **"Agreement"**) is entered into as of April ___, 2020 (the **"Effective Date"**), by and between BBR MANAGER, LLC, a Florida limited liability company (**"Manager"**), and FOODFIRST GLOBAL RESTAURANTS, INC., an Ohio corporation (**"Owner"**).

WHEREAS, Owner owns the Bravo and Brio restaurant brands, including 21 operating restaurant locations and 76 restaurant locations that are temporarily or to be permanently closed (the **"Business"**);

WHEREAS, Manager, through Manager's officers, employees, and staff, is experienced in providing management services with respect to the operation of restaurants such as the Business, and has the requisite professional experience to manage the Business consistent with industry practices and with state and federal regulations and requirements pertaining to the operation of the Business; and

WHEREAS, Owner desires to engage Manager to provide such management services with regard to the operation of the Business upon the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, the receipt and sufficiency of which is hereby acknowledged, Owner and Manager hereby agree as follows:

1. Engagement. Owner hereby engages Manager to supervise, direct, and provide the administrative services necessary for the operation of the Business, subject to the terms, conditions, and agreements set forth herein, and Manager hereby accepts said engagement.

2. Term. Unless earlier terminated as provided herein, the term of this Agreement shall commence on the Effective Date and expire on the earlier of (i) the date all or substantially all of the assets of Owner are sold to a third-party, (ii) the date Owner's chapter 11 plan has gone effective, and (iii) the date Owner's chapter 11 case is dismissed (the **"Term"**).

3. Agency. In the performance of Manager's duties hereunder, Manager shall act in all events as the representative of Owner and for Owner's account.

4. Peaceful Possession. During the Term, Owner shall permit and enable Manager to peaceably and quietly perform the services contemplated hereunder and in accordance with the provisions hereof.

5. Manager's Services. During the Term, Manager shall provide and perform and oversee the provision and performance of (in each case as applicable) services pertaining to the proper and efficient conduct of the Business and the management, administration, and operation

of the day-to-day activities of the Business. Manager shall perform Manager's duties hereunder in a diligent, careful, and vigilant manner to provide the services contemplated hereunder for the benefit of Owner in a manner consistent with all applicable industry standards to maximize long-term operational profitability and efficiency. Manager shall make available to Owner the full benefit of the judgment, experience, and advice of the members of Manager's organization and staff. In furtherance of the foregoing, and subject in all events to the terms of Section 6, unless otherwise directed by Owner, Manager shall provide, or oversee the provision or performance of, the following services to the Business on behalf of and for the benefit of Owner (collectively, the "**Services**"):

    a. Assist with, manage, and oversee the overall operation of the Business, including restaurant operations, menu development, licensing, permitting, purchasing, hiring, training, maintenance, quality control, risk management, marketing, accounting, financial planning, and information technology, and other related services relevant to the Business, including, without limitation, compliance with food safety and other laws and modification or improvement of delivery channels;

    b. Prepare annual budgets and financial projections for review and approval by Owner, make periodic evaluations, which shall not be less frequent than monthly, of the performance of all operational segments of the Business, paying particular attention to those segments where there is an inconsistency between expenditures and Owner approved budgets, and provide Owner with reasonable oversight and consultation in connection with same;

    c. Develop policies and procedures for the operation of the Business and consult with Owner on any material changes of policies or procedures;

    d. Provide or procure the provision of professional services for the benefit of Owner, including architects, engineers, contractors, brokers, attorneys, and independent auditors and tax accountants, as the same may be needed from time to time at the store level or otherwise required for day-to-day operation of the Business, including, without limitation, the selection and termination of such professionals;

    e. Subject to the provisions of this Agreement, negotiate Owner's contracts with third-party providers relating to the conduct of the Business;

    f. Assist with obtaining, transferring, and maintaining appropriate licenses and permits for the Business;

    g. Provide financial and accounting services, including payroll, tax, bookkeeping, accounts receivable, and accounts payable functions together with monthly reports to Owner regarding such items and any additional financial or operational reporting and metrics as Owner may reasonably request from time to time;

h.  Provide other clerical support, including the filing, on behalf of Owner, of third-party reports with the Internal Revenue Service or other appropriate taxing authorities having or claiming jurisdiction over Owner;

i.  Assist with the investigation, hiring, promoting, supervising, and discharging (if necessary) of full-time and part-time Owner personnel at the store level or otherwise required for day-to-day operation of the Business necessary for the efficient operation of the Business;

j.  Implement, maintain, and monitor human resource and employee relations issues involving the Business, including, without limitation, establishing and updating store level or otherwise required for day-to-day operation of the Business employee policy and procedures manuals and guidelines, and assistance with store level or otherwise required for day-to-day operation of the Business employee disciplinary matters and evaluations;

k.  Address risk management issues involving the Business and its customers, including evaluating and obtaining general comprehensive liability, professional liability, property, casualty, and other appropriate insurance policies and insurance coverages (including the naming of Manager as and additional insured on such policies), to the extent commercially reasonable;

l.  Assist with promotional activities, including media advertising and related marketing efforts;

m.  Arranging for the furnishing to the Business of utilities, maintenance, and other services, and for the acquisition of equipment and supplies as necessary or appropriate for the management, operation, maintenance, and servicing of the Business;

n.  Operate and maintain all store level Business systems (including telephone and cable systems), deal with systems' representatives, evaluate and recommend changes, expansions or substitutions of equipment to the Business, and manage access to the Business for such purposes;

o.  Issue periodic bills to either or both customers of the Business and other appropriate responsible parties for fees and other charges due to Owner, and use diligent efforts to promptly collect all such fees and charges and other revenues relating to the Business; and

p.  Coordinate the administration of the contract and other arrangements with respect to the operation of the Cherokee, North Carolina restaurant.

Notwithstanding anything in this Agreement to the contrary, it is understood and agreed that Manager's involvement in Owner's bankruptcy proceeding is strictly limited to providing Owner with information about the Business upon request and making recommendations about the Business to Owner in order to support Owner's administration of the bankruptcy proceeding. In addition, Manager shall negotiate lease and contract assumptions and rejections for the Business subject to and in consultation with Owner and Owner's outside advisors.

6. <u>Owner's Services</u>. Owner and Manager hereby agree that, notwithstanding any other provision of this Agreement to the contrary, ultimate control of, and ultimate liability for, the Business and its operation (including, without limitation, the determination of policies, procedures, and capital expenditures), is and shall continue throughout the Term to be retained by Owner. During the Term:

    a. Subject to Section 12, Owner shall promptly pay for any and all expenses of the Business and fund the Business's operating account(s) as reasonably necessary to cover all such expenses.

    b. Owner shall, notwithstanding anything in this Agreement to the contrary, make the following major decisions for the Business:
       i. the approval of operating budget(s) and any material deviations therefrom;
      ii. the sale of assets outside of the ordinary course of business;
     iii. the entry into or termination of real property leases;
     iv. the entry into or termination of financing arrangements;
      v. the entry into of any contract with a term longer than one (1) year or an anticipated cost to the Business greater than $100,000 annually (unless otherwise provided for in an Owner approved budget);
     vi. the entry into of any proposed settlement or compromise of any claim, litigation or other legal proceeding by or against the Business for more than $50,000 (net of insurance coverage);
    vii. the acquisition of any machinery or equipment for an aggregate purchase price greater than $50,000 (unless otherwise provided for in an Owner approved budget);
   viii. the entry into any contract, purchase order, or other arrangement for repairs at any restaurant for an amount greater than $50,000 (unless otherwise provided for in an Owner approved budget);
    ix. the hiring of any personnel pursuant to any employment contract or for annual compensation in excess of $100,000;
     x. the approval of any incentive program(s) (unless otherwise provided for in an Owner approved budget);
    xi. any change in existing insurance coverages;
    xii. any reduction in existing food safety standards and personal safety procedures; and

       xiii. any contract related to or on behalf of the Business with Manager or any affiliate of Manager.

    c. Owner shall designate and retain an individual to serve as **"Owner's Representative"**. Owner's Representative as of the Effective Date is Danilo Gamboa. Owner's Representative shall be Manager's primary point of contact on behalf of Owner. When and if Manager needs or desires Owner's input, Manager shall contact Owner's Representative. Owner's Representative shall promptly respond on behalf of Owner to any and all questions or requests posed by Manager. Owner's Representative shall devote reasonable time and effort to oversee on behalf of Owner the Business and actives of Manager under this Agreement.

7. <u>Compliance with Laws.</u>

    a. Manager shall use commercially reasonable efforts to ensure that the Business and the operation thereof by Manager comply with all federal, state, and local laws, rules, regulations, and ordinances applicable to the Business or the operation thereof by Manager. In the event the terms of this Agreement or the actions taken hereunder by Manager or Owner, at any time, shall fail to materially comply with any federal, state, or local law, rule, regulation, or ordinance, either or both Owner and Manager shall promptly take appropriate steps to cure such failure, and to the extent such failure requires the modification of this Agreement, the parties agree to make such modification to cause this Agreement to comply with such applicable laws, rules, regulations, and ordinances; <u>provided, however,</u> that if such modifications would materially reduce the rights or materially increase the obligations of either of the parties hereunder, the affected party shall be entitled to terminate this Agreement in lieu of agreeing to such modifications.

    b. Manager shall apply for and use Manager's commercially reasonable efforts to obtain and maintain in the name of Owner all licenses and permits required in connection with the management and operation of the Business in accordance with all applicable federal, state, and local laws, rules, regulations, and ordinances. Owner agrees to cooperate with Manager in applying for, obtaining and maintaining such licenses and permits.

    c. Notwithstanding the foregoing, the parties acknowledge and agree that Owner shall have ultimate responsibility for ensuring that the Business and the operation thereof comply with all applicable federal, state, and local laws, rules, regulations, and ordinances.

8. <u>Contracts.</u> Subject to the terms and conditions of this Agreement, Manager is authorized to make and enter into such contracts and agreements for the provision of supplies, material, equipment, or labor to or for the benefit of the Business as are required in the ordinary course of business for the operation, maintenance, and service of the Business.

9. <u>Repairs.</u> Subject to the terms and conditions of this Agreement and any applicable operating budget(s), Manager shall make or install or caused to be made or installed any proper repairs, replacements, and improvements in and to the Business and the furnishings and equipment in order to keep and maintain the same in good repair, working order and condition, and outfitted and equipped for the proper operation thereof in accordance with standards comparable to those prevailing in other similar restaurants in the United States.

10. <u>Bank Accounts.</u> Any bank accounts maintained by Manager for the Business shall be opened and maintained as separate, segregated accounts in the name of Owner. Such accounts shall permit checks thereon to be signed by any appropriate officer or employee of Owner or Manager, with such officers or employees to be specifically designated. Funds in such account or accounts shall not be commingled with any other funds controlled by Manager, and shall be disbursed only in accordance with this Agreement and, from time to time, upon the specific instruction of Owner. Manager shall maintain Owner's existing operating accounts for the Business in the name of Owner to and from which all funds collected from the operation of the Business are to be deposited and disbursed. These operating accounts may be interest bearing if it can be practically arranged and utilized by Manager.   To the extent funds are available in the operating accounts, Manager shall disburse such funds to pay promptly all expenses authorized under any budget approved by Owner or as otherwise permitted or authorized under the terms of this Agreement and any order enter in any bankruptcy proceedings commenced by Owner. With respect to the Business and subject to Section 12, Manager is expressly authorized and directed to disburse the following funds out of the operating account(s) established for either or both the Business and Owner in connection with the ordinary course of business and at such time or times as appropriate:

    a.  the salaries, wages, and all withholding taxes, unemployment insurance premiums or the like, worker's compensation premiums or the like, retirement fund contributions or the like, health insurance premiums or the like, and other fringe benefits and related expenses of Owner personnel;

    b.  the costs and expenses of utilities, services, and concessions of the Business;

    c.  the costs of insurance maintained for the Business;

    d.  the costs of all purchases of inventory, materials, and supplies incurred in the day-to-day operation of the Business;

    e.  all rent and other charges payable under any lease or any other agreement to which Owner is a party;

    f.  all taxes, assessments, and charges of every kind, including real estate taxes and special assessments, levied or assessed against the Business or Owner;

    g.  subject to the terms of this Agreement, the costs and expenses for repairs, maintenance, and alterations relating to the Business; and

    h.  the costs of any auditing or other accounting or tax services, all management fees, and other professional and administrative services utilized by the Business or otherwise in accordance with the provisions hereof.

In the event funds in the foregoing operating accounts are or will be insufficient to meet any expenditures authorized or required hereunder, or any expenses otherwise approved by Owner, Manager shall notify Owner of such deficiency, and thereupon, Owner shall use Owner's commercially reasonable efforts to promptly provide funds to meet such expenses. Manager shall not be obligated to advance any of Manager's owns funds to or for the account of Owner or to incur any liability hereunder for any such expenses. Nevertheless, if Manager at any time advances any funds for any such authorized expense, Owner shall immediately reimburse Manager for such funds upon demand, and any such advances shall bear annual interest at the rate of prime (as announced by *The Wall Street Journal* (Eastern Edition) from time to time), plus two percent (2%). Owner and Manager hereby agree that any advances provided by Manager to Owner pursuant to this Section will be considered to be ordinary course financing transactions. If the operating account(s) established pursuant to the terms hereof are not sufficient to pay all expenses, debt service, and fees of the Business for ten (10) consecutive business days, Manager shall be entitled to terminate this Agreement upon ten (10) business days written notice to Owner.

11. Compensation. As compensation for the Services rendered or to be rendered hereunder by Manager, Manager shall be entitled to a nonrefundable and continuing monthly management fee equal to $500,000.00 (the "**Management Fee**"), due and payable in advance on or before the first (1st) business day of each month throughout the Term and prorated for any partial calendar months. Subject to Section 12, Manager shall be responsible for payment of all fees, costs, and expenses incurred by Manager in connection with providing the Services, including anticipated enterprise level general and administrative expenses (including any costs of any employees of Owner retained by Owner at the request of Manager following the 30-day transition period discussed in Section 12.b. below) of approximately $150,000 per month, but excluding store-level expenses, including permits, licenses, insurance, marketing, and information technology expenses. Manager is hereby authorized to unilaterally deduct the Management Fee from the Business's operating account(s) on a monthly basis. In the event Owner incurs any authorized expense which is a Manager expense under this Agreement, Manager shall either (i) promptly reimburse Owner for such expense or (ii) reduce the next Management Fee payment by such amount. In the event the number of operating restaurant locations materially increases from the existing 21 operating restaurant locations, Owner and

Manager shall mutually agree on a reasonable increase to the Management Fee to compensate Manager for the additional work and associated expense.

12. <u>Business Expenses</u>.

    a.  Subject to Section 12.b., all debts and liabilities to third persons incurred by Owner or by Manager on behalf of and in the course of the operation of the Business shall be the debts and liabilities solely of Owner, and Manager shall not be liable for any debts or liabilities incurred in connection with, arising out of, or otherwise attributable to the operation of the Business unless such debt or liability is directly caused by the gross negligence, fraud, or willful misconduct of Manager.

    b.  Owner has advised Manager that the current approximate cost to operate Owner's existing corporate office, including compensation, benefits, utilities, supplies, and similar corporate level expenses, is approximately $500,000 per month for the existing 21 operating restaurant locations. In consideration for the Management Fee, Manager shall use commercially reasonable efforts to promptly internalize Owner's corporate business functions, which may include Manager employing one or more of Owner's existing employees, as soon as reasonably possible within ten (10) days of execution of this Agreement, but in all events within thirty (30) days of the Effective Date in order to enable Owner to close Owner's existing corporate office. Accordingly, Manager shall be responsible for the payment of any and all compensation and benefits of those persons employed by or engaged on behalf of Manager and Owner shall be responsible for the payment of any and all compensation and benefits of those persons employed by or engaged on behalf of Owner.

13. <u>Termination Rights</u>. In addition to any other rights set forth herein, this Agreement may be terminated, effective upon delivery of written notice, upon or after the happening of any of the following events:

    a.  Manager may terminate this Agreement in the event Owner has materially defaulted in the performance of Owner's obligations under this Agreement and shall have failed to cure such breach to the reasonable satisfaction of Manager after fifteen (15) days prior written notice (five (5) business days in the event of a monetary default); <u>provided</u>, <u>however</u>, that any such non-monetary default by Owner that is susceptible of being cured, shall not constitute a basis of termination if the nature of such default shall not permit it to be cured within the grace period allotted and, within such grace period, Owner shall have (i) commenced to cure such default and (ii) shall proceed to complete the same with reasonable diligence with such default being cured within thirty (30) days of Manager's prior written notice.

b. Owner may terminate this Agreement in the event Manager has materially defaulted in the performance of Manager's obligations under this Agreement and shall have failed to cure such breach to the reasonable satisfaction of Owner after fifteen (15) days prior written notice; provided, however, that any such default by Manager that is susceptible of being cured, shall not constitute a basis of termination if the nature of such default shall not permit it to be cured within the grace period allotted and, within such grace period, Manager shall have (i) commenced to cure such default and (ii) shall proceed to complete the same with reasonable diligence with such default being cured within thirty (30) days of Owner's prior written notice.

14. Transition. Upon or in advance of termination of this Agreement, Manager shall promptly and in a commercially reasonable manner transition to Owner or Owner's designee all of Manager's documentation and information for the Business. Manager covenants and agrees to assist Owner in a commercially reasonable manner with the orderly transition of the management and affairs of the Business to Owner or Owner's designee.

15. Intellectual Property. The trademarks, service marks, and other intellectual property owned by Owner or licensed to Owner and used in connection with the operation of the Business may be used by Manager solely in connection with the operation of the Business. It is expressly agreed that neither party will, by virtue of the provisions of this Agreement, acquire any right to any intellectual property of the other party. Each party agrees to cooperate with the other party by all reasonable means in the protection of the other party's intellectual property.

16. Release of Manager. Manager and Manager's members, managers, agents, officers, employees, representatives, subsidiaries, and affiliates (each a "**Manager Party**"), shall not be liable to Owner or to any other person or entity for any act or omission committed by Manager or any other Manager Party in the performance of this Agreement unless such act constitutes gross negligence, fraud, or willful misconduct. Notwithstanding any other provision of this Agreement, in no event shall Owner make any claims against any Manager Party on account of any alleged errors of judgment made in good faith in connection with or arising out of the operation of the Business or any Services to be provided hereunder.

17. Indemnification. For purposes of this Section, the term "**Liability**" shall mean any claim, liability, loss, damage, cost, or expense, including attorneys' fees.

a. Owner shall defend, indemnify, and hold harmless Manager and each other Manager Party from and against any Liability arising out of or incurred in connection with a Manager Party's performance of any Services or other obligations hereunder, unless such Liability is directly caused by the gross negligence, fraud, or willful misconduct of such Manager Party. It is the express intention of the parties that the indemnity provided for in this section is an indemnity by Owner to indemnify and protect each Manager Party from the

9

consequences of any Manager Party's ordinary (as opposed to gross) negligence, whether that negligence is the sole or a concurring cause of any loss, injury, death, or damage.

b. Manager shall defend, indemnify, and hold harmless Owner and Owner's shareholders, managers, agents, officers, employees, representatives, subsidiaries, and affiliates from and against any Liability arising out of or incurred in connection with a Manager Party's gross negligence, fraud, or willful misconduct.

18. Assignment. This Agreement may not be assigned by either party unless such party obtains the prior written consent of the other party.

19. Notices. Any notice, demand, consent, approval, request or other communication permitted or required to be given hereunder by one party to the other (a "**Notice**") shall be in writing and shall be either (i) personally delivered, (ii) delivered by U.S. mail, or (iii) delivered by FedEx or other nationally (or as appropriate, internationally) recognized overnight delivery service, to the following address:

| | |
|---|---|
| If to Manager: | BBR Manager, LLC<br>4700 Millenia Boulevard, Suite 400<br>Orlando, Florida 32839<br>Attention: General Counsel |
| If to Owner: | FoodFirst Global Restaurants, Inc.<br>c/o GP Investments, Ltd.<br>150 East 52nd Street, Suite 5003<br>New York, New York 10022<br>Attention: Rodrigo Boscolo |

If a Notice is delivered in person, such Notice is given when it is delivered to the recipient. If a Notice is delivered by U.S. mail, such Notice is given two (2) business days after the date on which such Notice is deposited in the United States mail, postage prepaid, and addressed as provided above. If a Notice is delivered by overnight courier, such Notice is given one (1) business day after the date on which such Notice is deposited with such courier, delivery costs prepaid, and addressed as provided above. Any party may designate another address (or change its address) and/or other authorized recipients for notices hereunder by delivery of a written notice to the other party in accordance with the provisions of this section.

20. Successors. Subject to the provisions contained herein, this Agreement shall be binding upon and inure to the benefits of the successors, assigns, and legal representatives of the parties.

21. <u>Governing Law; Venue</u>. The interpretation and construction of this Agreement, and all matters relating hereto, shall be governed by the laws of the State of Florida. Each party hereby irrevocably consents to the exclusive jurisdiction and venue of the courts situated in Orange County, Florida, in connection with any action or proceeding arising out of or relating to this Agreement or a default of this Agreement.

22. <u>Entire Agreement</u>. This Agreement constitutes the entire understanding and agreement between the parties and shall supersede all prior negotiations, understandings, and agreements, whether oral or written.

23. <u>Amendments, Changes, Modifications, and Waivers</u>. This Agreement may be amended, changed, modified, or altered, and provisions of this Agreement may be waived, only in a writing specifically stating that it is an amendment to the Agreement, referencing the particular section of the Agreement to be amended, changed, modified, altered or waived, and signed by a duly authorized signatory of Owner, Manager and Bravo Brio Holdings, LLC, a Florida limited liability company ("**Holdings**").

24. <u>Severability</u>. If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those as to which it is held invalid and unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforceable to the fullest extent permitted by law.

25. <u>Representations, Warranties and Covenants</u>.

    a. Owner represents, warrants and covenants that (i) Owner has the full right, power, capacity, and authority to enter into, fully perform and carry out each and all of the terms and conditions of this Agreement applicable to Owner; (ii) there is no contract or understanding with any other person or entity and to which Owner is a party that would interfere with Owner's performance of Owner's obligations herein; (iii) the consent of no other person or entity is necessary for Owner to enter into this Agreement; and (iv) Owner shall perform Owner's obligations under this Agreement in accordance with all applicable laws, rules, regulations, and ordinances.

    b. Manager represents, warrants and covenants that (i) Manager has the full right, power, capacity and authority to enter into, fully perform and carry out each and all of the terms and conditions of this Agreement applicable to Manager; (ii) there is no contract or understanding with any other person or entity and to which Manager is a party that would interfere with Manager's performance of Manager's obligations herein; (iii) the consent of no other person or entity is necessary for Manager to enter into this Agreement; and (iv) Manager shall perform Manager's

obligations under this Agreement in accordance with all applicable laws, rules, regulations, and ordinances.

c. It is understood and agreed that Manager has not made any guarantee, warranty, or representation to Owner with respect to the profitability or other financial performance of the operation of the Business.

26. No Partnership or Joint Venture. It is expressly agreed by Owner and Manager that Manager is at all times acting and performing the Services as an independent contractor. Nothing contained in this Agreement shall constitute or be construed to be or create a partnership or joint venture between Owner and Manager, or the permitted successors, assigns or affiliates of either party.

27. [Intentionally Omitted].

28. No Third-Party Beneficiaries. Nothing contained in this Agreement shall be deemed to create any right in any creditor or other person or entity not a party to this Agreement, and this Agreement shall not be construed in any respect to be an agreement in whole or in part for the benefit of any other party, person or entity; provided, however, that Holdings shall be an express third-party beneficiary of Section 23 of this Agreement..

29. Personal Liability. Notwithstanding anything to the contrary contained in this Agreement, no officer, director, manager, shareholder, member, employee, partner, agent, or other representative of Manager or Owner or any of their respective affiliates or subcontractors, or their permitted assigns, nor any legal representative, heir, estate, successor, or assign of any such officer, director, manager, shareholder, member, employee, partner, agent, or other representative in or of any such person, or any other principal in Manager or Owner, whether disclosed or undisclosed, shall have any liability, personal or otherwise, with respect to the performance by Manager or Owner of any of their respective obligations under this Agreement. In the event a court of competent jurisdiction determines that a party is liable to the other party under any theory including an alleged event of default under this Agreement, the sole recourse of such party shall be to maintain or institute an action or proceeding against the other party to the extent permitted herein, and any judgment awarded shall be satisfied, if at all, out of the assets of the losing party, and the prevailing party shall not seek or claim recourse against any other person or a party hereinabove named or referred to in this section as being exculpated from any liability, personal or otherwise.

30. WAIVER OF JURY TRIAL. EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT. EACH PARTY CERTIFIES AND ACKNOWLEDGES THAT (i) NO REPRESENTATIVE, AGENT, OR ATTORNEY OF

THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER; (ii) EACH PARTY UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER; (iii) EACH PARTY MAKES THIS WAIVER VOLUNTARILY; AND (iv) EACH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

31. <u>NO CONSEQUENTIAL OR PUNITIVE DAMAGES</u>. UNDER NO CIRCUMSTANCES SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR EXEMPLARY DAMAGES, EVEN IF THAT PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, ARISING FROM ANY PROVISION OF THIS AGREEMENT.

32. <u>Confidentiality</u>. Neither party shall disclose (or authorize any third-party to disclose) any proprietary or confidential information of the other party, with the exception only of disclosure by either party to their respective agents, attorneys, accountants, consultants, representatives, or employees or except as (a) may be required by law, rules of government agencies, or court proceedings; (b) to perform or enforce the terms of this Agreement; (c) if such term(s) are publicly known prior to any confidentiality obligation herein; or (d) if such term(s) become publicly known other than by a disclosure from a source who was subject to a confidentiality obligation under this Agreement.

33. <u>No Waiver</u>. The failure of either party at any time or times, to demand strict performance by the other party of any of the terms, covenants or conditions set forth in this Agreement shall not be construed as a continuing waiver or relinquishment thereof and either party may at any time demand strict and complete performance by the other party of said terms, covenants and conditions.

34. <u>Construction</u>. Each of the parties has participated in the negotiation and preparation of this Agreement and therefore waives any rule of law or judicial precedent that provides that contractual ambiguities are to be construed against the party who shall have drafted the contract in question. Headings are for ease of reference only and shall not be given any effect in interpreting this Agreement. Time is of the essence in the performance of this Agreement.

35. <u>Non-Disparagement</u>. Neither party shall make any disparaging, false, misleading, or otherwise defamatory comments about the other, this Agreement, the Business, or any of their shareholders, members, managers, officers, employees, agents, consultants, affiliates, products, and services.

36. <u>Survival</u>. Any provision of this Agreement which contemplates performance or observance subsequent to any termination of this Agreement (including, but not limited to,

Sections 15, 17, 32, and 35) shall survive any termination of this Agreement and continue in full force and effect.  Additionally, all provisions of this Agreement shall survive the termination of this Agreement to the fullest extent necessary to give the parties the full benefit of the bargain expressed herein.

37. <u>Multiple Copies or Counterparts of Agreement.</u> The original and one or more copies of this Agreement may be executed by one or more of the parties.  In such event, all of such executed copies shall have the same force and effect as the executed original and all of such counterparts taken together shall have the effect of a fully executed original. The transmission of a signed counterpart by facsimile or other means of electronic delivery (including email) may be relied upon as fully as the delivery an originally executed counterpart.

*Signature Page Follows*

IN WITNESS WHEREOF, the parties have signed this Agreement as of the Effective Date.

**MANAGER:**

BBR Manager, LLC,
a Florida limited liability company

By: _____
Name: Thomas Avallone
Title: Manager

**OWNER:**

FoodFirst Global Restaurants, Inc.,
an Ohio corporation

By: _____
Name: _____
Title: _____

26320478.1

FoodFirst Global Restaurants, Inc.
420 S. Orange Ave., Ste. 900
Orlando, FL 32801

City National Bank
Attn: Portfolio Manager
555 South Flower St, 24th FL
Los Angeles, CA 90071

Gordon Food Service
P.O. Box 88029
Chicago, IL 60680-1029

R.Scott Shuker, Esq
Shuker & Dorris, P.A.
121 S. Orange Avenue
Suite 1120
Orlando, FL 32801

City National Bank
Attn: Managing Counsel
555 South Flower St, 24th FL
Los Angeles, CA 90071

GULFSTREAM PARK RACING
ATTN:  ACCTS RECEIVABLES
901 S. FEDERAL HWY
Hallandale, FL 33009

100 PRATT ST. VENTURE, LLC
PO BOX 780462
Philadelphia, PA 19178-0462

Davis & Jones, LLC
209 West 2nd St. Ste. 322
Fort Worth, TX 76102

HINES GLOBAL REIT
4875 TOWN CENTER LLC
P.O. BOX 742632
Atlanta, GA 30374-2632

AMERICAN EXPRESS PCARD
1801 NW 66TH AVE. STE 103C
Fort Lauderdale, FL 33313-4571

DOLPHIN MALL ASSOCIATES
PO BOX 6700
DEPT 189501
Detroit, MI 48267-1895

Holland & Knight LLP
Attn:  Eric W. Kimiball
200 Crescent Court, Ste 1600
Dallas, TX 75201

ANTHEM BCBS
PO BOX 645438
Cincinnati, OH 45264-5438

EASTON TOWN CENTER LLC
L-3769
Columbus, OH 43260-3769

Internal Revenue Service
Centralized Insolvency Ops
PO Box 7346
Philadelphia, PA 19101-7346

Bugatti Merger Sub, Inc.
420 S. Orange Ave., Ste. 900
Orlando, FL 32801

ESIS Customer Service
P.O. Box 15054 #1275 3-E
Wilmington, DE 19850

K&L Gates LLP
Rua Iguatemi
151 conjunto 281
São Paulo - SP, 01451-011
Brazil

C.H. ROBINSON COMPANY, INC
P.O. BOX 9121
Minneapolis, MN 55480-9121

FAIRFAX COMP OF VIRGINIA
P.O BOX 67000
DEPT 56501
Detroit, MI 48267-0565

Little John's Refrigeration
1795 N. Fry Rd., Ste. 315
Katy, TX 77449

Chapman & Cutler LLP
Attn: Anthony DiGiacomo, Esq
1270 Ave of Americas 30th FL
New York, NY 10020

Garrison Loan Agency Service
Attn: Portfolio Manager
1290 Ave of Americas Ste 914
New York, NY 10104

Lucas Santos Rodas
Av Brig. Faira Lima
2601 - CJ. 42
Sao Paulo - SP - 01452-924
Brazil

CHERRY HILL TOWN CTR PARTN
1260 SHELTON ROAD
ATTN: SHOSHANA MAGDIELI
Piscataway, NJ 08854

Garrison Loan Agency Service
Attn:  Legal Department
1290 Ave of Americas Ste 914
New York, NY 10104

MICHAEL'S FINER MEATS
29037 NETWORK PLACE
Chicago, IL 60673-1290

OHIO TREASURER OF STATE
180 E. BORAD STREET
Columbus, OH 43215

Tribal Casino Gaming Enterpr
P.O. Box 1955
Cherokee, NC 28719

OPEN TABLE INC
29109 NETWORK PLACE
Chicago, IL 60673-1291

TYSONS CORNER CENTER
P.O. BOX 849554
Los Angeles, CA 90087-9554

Orange County Tax Collector
301 S Robinson Avenue
Orlando, FL 32801

Wasserstrom Company
P.O. Box 182056
Columbus, OH 43218-2056

Paul, Weiss, Rifkind, et al
Attn: S. Koo or D. Klein
1285 Avenue of the Americas
New York, NY 10019-6064

WEST FARMS MALL, LLC
PO BOX 67000
DEPT 55501
Detroit, MI 48267-0555

Piper Sandler & Co.
800 Nicollet Mall
Suite 900
Minneapolis, MN 55402

PRODUCE ALLIANCE LLC
PO BOX 7762
Carol Stream, IL 60197-7762

PROFORMA
6341 NICHOLAS DRIVE
Columbus, OH 43235

ROUSE - PARK MEADOWS, LLC
P.O. BOX 86
Minneapolis, MN 55486-3096

STAR-WEST FRANKLIN PK MALL
P.O. BOX 398008
San Francisco, CA 94139-8008