## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:

FOODFIRST GLOBAL RESTAURANTS, INC.,
*et al.*,[1]

                              Debtors.

Chapter 11

Case No. 6:20-bk-02159-KSJ

Joint Administration
Requested

**OMNIBUS OBJECTION OF CERTAIN PACA CREDITORS TO DEBTORS'
EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND
REQUEST FOR EMERGENCY PRELIMINARY HEARING; EMERGENCY MOTION
FOR ORDER AUTHORIZING APPROVAL OF MANAGEMENT AND ACCOUNTING
AGREEMENT; AND EMERGENCY MOTION OF DEBTORS SEEKING ENTRY OF AN
INTERIM AND FINAL ORDER (A) AUTHORIZING THE DEBTORS TO OBTAIN
POST-PETITION FINANCING FROM THE DIP LENDER PURSUANT TO 11 U.S.C. §§
105, 361, 362, 363, AND 364;  (B) PROVIDING LIENS, SECURITY INTERESTS AND
SUPERPRIORITY CLAIMS TO THE DIP LENDER; (C) MODIFYING THE
AUTOMATIC STAY TO ALLOW THE DIP LENDER TO TAKE CERTAIN ACTIONS;
(D) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETION SECURED
PARTIES AND (E) APPROVING THE FORM AND METHOD OF NOTICE THEREOF
AND REQUEST FOR EMERGENCY HEARING**

COME NOW, Produce Alliance LLC ("Produce Alliance"), Get Fresh Produce, Inc. ("Get

Fresh"), Gulf Coast Produce Distributors, Inc. ("Gulf Coast"), PPINC., LLC d/b/a Premier

Produce ("Premier"), Premier Produce Central Florida, LLC t/a Downtown Produce

("Downtown"), Sirna & Sons, Inc. t/a Sirna & Sons Produce ("Sirna"), and Willie Itule Produce

Inc. ("Itule") (hereinafter collectively referred to as  "Certain PACA Creditors"), by and through

undersigned counsel, and hereby object (the "Objection") to *Debtors' Emergency Motion for*

*Authority to Use Cash Collateral and Request for Emergency Preliminary Hearing (the "Cash*

---

[1]  The Debtors in these cases for which joint administration has been sought are: Food First Global Restaurants, LLC, Case No. 6:20-bk-02159; FoodFirst Global Holdings, LLC, Case No. 6:20-bk-02161; Brio Tuscan Grille of Maryland, Inc., Brio Marlton, LLC, Case No. 6:20-bk- 02162; Brio Tuscan Grille of Baltimore, LLC, Case No. 6:20-bk-02164; Cherry Hill To, LLC, Case No. 6:20-bk-02166; Brio Tuscan Grille of Cherokee, LLC, Case No. 6:20-bk-02165; and Bravo Development of Kansas, Inc., Case No. 6:20-bk-02167.

*Collateral Motion") [Doc. No. 9]; Emergency Motion for Order Authorizing Approval of Management and Accounting Agreement (the "Management and Accounting Motion") [Doc. 14]; and Emergency Motion of Debtors Seeking Entry of an Interim and Final Order (A) Authorizing the Debtors To Obtain Post-Petition Financing From the DIP Lender Pursuant to 11 U.S.C. §§105, 361, 362, 363, and 364; (B) Providing Liens, Security Interests and Superpriority Claims to the DIP Lender; (C) Modifying the Automatic Stay to Allow the DIP Lender to Take Certain Actions; (D) Granting Adequate Protection to Certain Prepetition Secured Parties and (E) Approving the Form and Method of Notice Thereof and Request for Emergency Hearing Scheduling a Final Hearing, and (VII) Granting Related Relief (the "DIP Motion") [Doc. 23] filed* by the above-captioned Debtor.

For the reasons set forth below, Certain PACA Creditors object to the relief requested in the Cash Collateral Motion, the Management and Accounting Motion, and the DIP Motion as contravening their rights to be paid from non-bankruptcy estate trust assets under the Perishable Agricultural Commodities Act, 7 U.S.C. §499e(c) ("PACA"). In support of their Objection, Certain PACA Creditors respectfully state as follows:

## BACKGROUND

1.    On April 10, 2020 (the "Petition Date"), Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court.

2.    Debtors are continuing in possession of their business and property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.    As set forth in the Declaration of Robert Feldgreber, Debtor FoodFirst Global Restaurants, Inc. purchased in excess of $230,000.00 worth of produce in 2019 and in excess of 2,000 pounds of produce in a single day, and therefore is a dealer subject to license under the PACA, as well as the trust provisions of PACA. 7 C.F.R. 46.2(m) and (x); 7 U.S.C. §499e(c).

4.    Certain PACA Creditors are all PACA licensees who preserved their respective rights as beneficiaries of the statutory trust created under PACA by placing specified language on their invoices to Debtors as authorized by 7 U.S.C. § 499e(c)(4).  Prior to the Petition Date, Certain PACA Creditors supplied Debtors with perishable agricultural commodities having an aggregate principal value of $475,023.03, all of which remains unpaid and is past due, as follows:

| Certain PACA Creditors | Principal Pre-Petition PACA Trust Balance |
|---|---|
| Produce Alliance, LLC | $171,440.58* |
| Downtown Produce | $67,001.16* |
| Get Fresh Produce | $  6,983.32 |
| Gulf Coast Produce | $   4,996.72* |
| Premier Produce | $116,093.64* |
| Sirna & Sons | $ 98,735.68 |
| Willie Itule Produce | $    9,771.93 |
| **TOTAL** | **$475,023.03**\*\* |

*Principal amount set forth subject to further review and revision to remove any nominal charges for lime juice and/or dairy items for which PACA trust protection is not sought.

**Total amount does not include contract interest or attorneys' fees due.

5.    A Declaration from the Chief Financial Officer of Produce Alliance is filed herewith as **Exhibit "A,"** along with copies of Produce Alliance's PACA License information, an aged receivable report, and sample unpaid invoice (which are voluminous) with notice of intent to preserve PACA trust language set forth therein.  True and correct copies of the other PACA

Creditors' respective PACA License information, statements of account, and representative sample unpaid invoice, are attached hereto as **Exhibits "B" through "G."** [2]

6.      On April 10, 2020, Debtor FoodFirst filed its Cash Collateral Motion seeking to use $4,147,000.00 of Cash Collateral to continue to operate its business for the next thirteen weeks, with additional amounts to be subsequently sought.  There is no mention of payment or providing adequate protection via segregation of funds to PACA Trust Creditors in the Cash Collateral Motion or accompanying budget.  Instead, Debtor FoodFirst proposes to grant adequate protection to its secured lenders, City National Bank and Garrison Loan Agency Services, LLC in the form of replacement liens.  *See* Cash Collateral Motion at 3, para. 9.

7.      On April 13, 2020, Debtor FoodFirst filed its Management and Accounting Motion seeking to employ the services of BBR Manager, LLC to perform the management, administration, and operation of the day-today corporate and management activities of FoodFirst's Brio and Bravo restaurants while FoodFirst pursues a going concern sale of its assets.  Pursuant to the proposed Management Agreement with BBR Manager, LLC, Debtor will pay BBR Manager LLC a non-refundable monthly management fee of $500,000.00.  *See* Management and Accounting Motion at pp. 3-4, para. 10.  The Management and Accounting Motion omits any mention of PACA or the source of funds to pay the proposed monthly management fee.

8.       On April 13, 2020, Debtor FoodFirst and its affiliated Debtors filed their DIP Motion seeking approval to obtain $10,000,000 in financing from GPEE Lender, LLC, with an initial thirteen-week budget that omitted any line item for payment of pre-petition PACA trust claims.  The DIP Motion states that Debtors owe $27,000,000 to pre-petition secured lenders who

---

[2] Certain PACA Creditors note that in its Petition for Relief, Debtor FoodFirst Global Restaurants, Inc. ("FoodFirst") listed C.H. Robinson Co., another PACA licensee whom undersigned counsel does not represent, as being owed approximately $336,000.00.

have first priority interest in all of Debtors' cash collateral, and who consent to the terms of the DIP Motion since the secured lenders will be receiving adequate protection in the form of replacement liens subordinate only to a Carve-Out for Debtors' attorneys' fees, US Trustee fees, and pre-petition secured lenders' fees, and the priming DIP Liens; administrative expense claims with priority over any and all other administrative expenses (provided the DIP obligations have been paid in full in cash); a cash payment of $175,000 for attorneys' fees and expenses incurred up to 60 days after the Petition Date; a $2.5 million promissory note secured by all assets of the proposed Purchaser of Debtors' assets; a $1.5 million contingent return note; and an agreement that the pre-petition secured lenders will receive the net cash proceeds from the sale of real property located in Indianapolis, Indiana.  *See* DIP Motion, pp. 11-12.

9.      Although not spelled out in detail in the DIP Motion, a review of the Term Sheet attached as Exhibit A to the Motion, as well as the proposed Interim DIP Order, reveals that all of Debtors' assets will be sold to the proposed DIP Lender with the purchase price to consist of a credit bid, plus interest and attorneys' fees.  *See* Exhibit A, Term Sheet; *see also* Interim DIP Order, para. 39. Moreover, the Term Sheet and Interim DIP Order establish that the DIP financing is being provided in reliance upon the Court approving a 363 sale process and bidding procedures allowing for credit bidding by the DIP Lender, with no separate motion seeking such relief having been filed by any party to date.  In addition, the proposed Interim DIP Order provides the DIP Lender with relief from the automatic stay upon the occurrence of certain events of default by Debtors, and the ability to levy on Debtors' property, without having to obtain any further order from the Court.

10.     Paragraph 4 of the Interim DIP Order provides that no obligation, payment or transfer of assets to the DIP Lender shall be stayed, avoidable, recoverable, or subject to

disgorgement, offset or subordination under any applicable law.  Paragraph 5 of the Interim DIP Order defines the DIP collateral securing the DIP Loan as all assets of the Debtors, of whatever kind or nature, including but not limited to cash, accounts, receivables, inventory, real property, and equipment of the Debtors.

11.     Paragraph 37 of the Interim DIP Order provides for payment of attorneys' fees to counsel for the DIP Lender and Prepetition Secured Lenders without the need to follow any guidelines or Bankruptcy Code standards, and without the need to obtain approval by the Court. PACA creditors are not entitled to any notice of fee requests by the lenders' counsel.

12.     Paragraph 45 of the Interim DIP Order requires unpaid PACA Creditors to seek standing to file a Challenge Action and file a Challenge Action within seventy-five (75) calendar days from the date of entry of the Interim DIP Order to challenge the priority of the DIP Lender and Prepetition Secured Lenders' claims to Debtors' assets.   Paragraph 52 of the Interim DIP Order provides that the "equities of the case" exception under Section 552(b) of the Bankruptcy Code is inapplicable.  Finally, paragraph 60 of the Interim DIP Order provides that all terms therein survive until indefeasible payment in full in cash of all secured lender obligations is received by the DIP Lender and Prepetition Lenders.

## OBJECTIONS

13.     Certain PACA Creditors object to the Debtors' Cash Collateral Motion, Management and Accounting Motion, and DIP Motion on the grounds that all three Motions are substantively prejudicial to PACA Creditors' rights, as the Motions not only fail to provide (i) for payment of PACA trust assets to the PACA trust beneficiaries in the first instance or (ii) adequate protection for the diminution in value of the PACA trust beneficiaries' interests in the statutory trust in the form of a set-aside or escrow equal to the total amount of Debtors' pre-petition PACA

trust debt, but also impermissibly seeks to prime the interests of Certain PACA Creditors via super-priority liens and credit bidding in the event of a sale. The Debtors' DIP Motion and Interim Order thereon also seek to *exacerbate* the amounts of PACA trust claims by requiring Certain PACA Creditors to incur additional attorneys' fees[3] and challenge the priority of secured lenders liens to hopelessly commingled trust assets by filing an adversary proceeding, when the priority of the PACA trust over secured lenders' liens is self-evident from the PACA statute itself. 7 U.S.C. § 499e(c).

### III.    ARGUMENT

### A.  The PACA Trust

14.    The statutory PACA trust requires a produce receiver to hold in trust as a fiduciary its produce-related assets, which includes the produce itself, products derived therefrom, as well as any receivables or proceeds from the sale thereof, until full payment is made to the seller. 7 U.S.C. § 499e(c)(2). See gen., *Nickey Gregory Co., LLC v. AgriCap, LLC,* 597 F.3d 591, 595 (4th Cir. 2010); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998); *Tom Lange Co. v. Kornblum & Co., (In re Kornblum & Co.),* 81 F.3d 280 (2d Cir. 1996); *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.,* 986 F.2d 1010 (6th Cir. 1993) (noting that assets and proceeds from produce should be held in trust until payment in full). The establishment of the trust is an unequivocal declaration that produce-derived assets are distinct and must be used to pay produce suppliers. *Produce Alliance v.*

---

[3]  Interest and attorneys' fees are "sums owing in connection with" the transaction to which a PACA claimant is entitled; provided that a "contractual right arose from the exchange of contractual communications and [a PACA claimant's] invoices, then [the PACA claimant] has a right under PACA to enforce the full scope of its perishable agricultural commodities contract." *Middle Mountain Land and Produce, Inc. v. J.R. Simplot Company*, 307 F.3d 1220, 1224-25 (9th Cir. 2002); *see also Country Best v. Christopher Ranch, LLC,* 361 F.3d 629, 632 (11th Cir. 2004) (finding that the term "sums owing in connection with" includes "not only the price of commodities but also . . . attorneys' fees and interest that buyers and sellers have bargained for in their contracts."); *Nickey Gregory Co. LLC v. AgriCap LLC,* 592 F.Supp.2d 862, 877 (D.S.C. 2008)(awarding interest and attorneys' fees to PACA creditors).

*Let-Us Produce,* 776 F.Supp.2d 197, 201 (E.D. Va. 2011) (quoting *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Veg Co.,* 336 F.ed 410, 413 (5th Cir. 2003).

### *1. The Scope of the Trust*

15.    Section 499e(c)(2) defines the *corpus* of the trust as all produce, including all inventories of food or other products derived from produce, and receivables or proceeds from the sale of produce or its products. 7 U.S.C. § 499e(c)(2).  The commingling of trust assets does not defeat the trust.  7 C.F.R. § 46.46(b).  In addition, under common law trust principles, the trust extends to any other assets, including real property, acquired from a commingled account.  *Sanzone-Palmisano Co.,* 986 F.2d at 1013; *In re Kornblum & Co., Inc.*, 81 F.3d at 286-287; *In re Atlantic Tropical Market Corp.*, 118 B.R. 139, 142-43 (Bankr. S.D. Fla. 1990).

16.    In the bankruptcy context, the Debtors have the very difficult burden of establishing which, if any, assets are *not* subject to the PACA trust.  See, *Sanzone-Palmisano,* 986 F.2d at 1014; *In re Atlantic Tropical Market*, 118 B.R. at 142; *In re Richmond Produce*, 112 B.R. 364, 368 (N.D. Cal. 1990) ("The unpaid sellers are not required to trace and the trust arises immediately upon delivery.").  A PACA debtor must prove that either:  (1) no PACA trust existed when its interest was acquired; or (2) although a PACA trust existed at the time, the interest was not acquired with trust assets; or (3) although a PACA trust existed when the interest was acquired, and the interest was acquired with trust assets, all unpaid sellers of produce were paid in full prior to the transactions involving the unpaid PACA trust creditors at issue.  *In re Kornblum & Co., Inc.*, 81 F.3d at 287.

17.    The *Sanzone-Palmisano* court characterized this burden as nearly *impossible* to carry once trust proceeds have been commingled with non-trust proceeds.

> "We hold that a purchaser, or PACA debtor, has the burden of showing that disputed assets were not acquired with proceeds from the sale of produce or produce-related assets. . . .  [I]n the conventional case, where the produce was sold at a gross profit, the proceeds were commingled in a general fund, and the general fund was used to

buy more inventory, the PACA debtor will be unable to meet its burden, and the produce supplier will prevail. We believe that this is the outcome that Congress intended."

*Sanzone-Palmisano*, 986 F.2d at 1014.

18.    Thus, a PACA debtor does not meet its burden of showing that the trust is inapplicable to non-produce inventory, or other assets, merely by establishing that the other items are not produce, or that only a certain percentage of the PACA debtor's inventory consists of produce.  *Sanzone-Palmisano Co.*, 986 F.2d at 1013; *In re Kornblum & Co., Inc.*, 81 F.3d at 286-87; *In re Atlantic Tropical Market Corp.*, 118 B.R. at 142-43.

### *2.  Full Payment Promptly Required*

19.    Congress also specifically directed that the failure to maintain the trust and make *full payment promptly* to the trust beneficiary is unlawful.  7 U.S.C. § 499b(4).  Agricultural merchants, dealers and brokers, "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities[,]" and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed.  7 C.F.R. § 46.46(d)(1).

### *3.  Secured Financing Arrangements Prohibited*

20.    Furthermore, Congress stated that secured financing arrangements, in which produce proceeds are used as security and diverted from the suppliers to lenders, are against the public interest and a burden on commerce, and that the purpose of this law is to remove this burden on commerce. 7 U.S.C. § 499e(c)(1); see, *Nickey Gregory Co., LLC v. AgriCap, LLC,* 597 F.3d 591, 595 (4th Cir. 2010); *Consumers Produce Co. v. Volante Wholesale Produce*, 16 F.3d 1374 (3d Cir. 1994); *E. Armata, Inc. v. Platinum Funding Corp.*, 887 F. Supp. 590 (S.D.N.Y. 1995); *A&J Produce Corp. v. CIT Group/Factoring, Inc.*, 829 F. Supp. 651 (S.D.N.Y. 1993).   Payment to secured lenders in

advance of PACA trust creditors when the PACA trust has been breached, as established by the bankruptcy petition in this proceeding, is prohibited.  See *Nickey Gregory Co., LLC v. AgriCap, LLC,* 597 F.3d at 594 (secured lender ordered to disgorge trust assets); *A & J Produce Corp. v. Bronx Overall Economic Development Corp.*, 542 F.3d 54, 58 (2d Cir. 2008).  The Debtors simply fail to acknowledge the automatic floating trust impressed on all of their assets existing in favor of their PACA trust creditors, as both the Interim DIP-Cash Collateral Motion and Order fail to include among its recitation of pre-petition indebtedness any PACA trust claims.

### 4. *PACA Trust Assets Are Not Property of the Estate*

21.    It is well established that PACA trust assets are not property of a bankruptcy estate and instead must be set aside for distribution to trust beneficiaries. "If a buyer or receiver declares bankruptcy ..., trust assets are not to be considered part of the estate to be distributed to other creditors or sold unless all trust beneficiaries have been paid."  49 Fed. Reg. at 45738.  See gen., *Nickey Gregory Co., LLC v. AgriCap, LLC,* 597 F.3d at 595; *In re Long John Silver's Restaurants, Inc.*, 230 B.R. 29 (Bankr. D. Del. 1999); *In re Kelly Food Products, Inc*., 204 B.R. 18 (Bankr. C.D. Ill. 1997); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F.Supp. 346 (S.D.N.Y. 1993);  *In re Southland & Keystone*, 132 B.R. 632 (9th Cir. BAP 1991); *In re Asinelli, Inc.,* 93 B.R. 433 (M.D.N.C. 1988); *In re Carolina Produce Distributors, Inc.,* 110 B.R. 207 (W.D.N.C. 1990); *In re Fresh Approach, Inc.*, 51 B.R. 412 (Bankr. 1985); *In re Milton Poulos, Inc.,* 94 B.R. 648 (Bankr. C.D. Cal. 1988).  "That the corpus of a trust is not property of the estate is so widely accepted as to be beyond dispute." *In re Fresh Approach, Inc.,* 51 B.R. at 419.  In the language of the Bankruptcy Code, Debtors hold no equitable interest in PACA trust assets.  11 U.S.C. § 541(d).[4]

---

[4]    11 U.S.C. § 541(d) states in pertinent part:  "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest,…becomes property of the estate…only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

22.    When a produce supplier is not paid, it is entitled to immediate relief in the form of segregation and payment of trust assets. See *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir. 1990); *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987); *In re Richmond Produce Co., Inc.*, 112 B.R. 364 (N.D. Cal. 1990); *J.R. Brooks & Son v. Norman's Country Market*, 98 B.R. 47, 50 (N.D. Fla. 1989); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bankr. C.D. Ill. 1997) (debtor required to immediately pay trust assets to the PACA trust creditors); *In re W.L. Bradley, Inc.*, 75 B.R. 505 (E.D. Pa. 1987) (automatic stay lifted and immediate payment of trust proceeds required to the PACA trust creditors); *In re Monterey House, Inc.*, 71 B.R. 244, 249 (S.D. Tex. 1986) (PACA defendant ordered to disburse unpaid amounts held in trust, and retain remainder in segregated, interest-bearing account to be used to pay PACA creditors' interest and attorneys' fees). In a case such as this, where Debtors have presumably commingled the trust assets with non-trust assets, the trust extends to all of Debtors' inventory gained from a commingled account, *Sanzone-Palmisano Company v. M. Seaman Enterprises, Inc.*, 986 F.2d 1010 (6th Cir., 1993), and to any other assets acquired with PACA trust funds. *In re Kornblum & Co., Inc.*, 81 F.3d 280 (2d Cir. 1996); *In re Atlantic Tropical Market Corp.*, 118 B.R. 139 (Bankr. S.D. Fla. 1990).

23.    Because PACA trust assets are outside of the bankrupt's estate, PACA trust beneficiaries, "take complete priority in payment as to all the assets of the debtor, *ahead of the claims of creditors who have valid security interests*, *ahead of the administrative costs and expenses incurred in [bankruptcy] court*, and ahead of all other priority and general creditors." *In re Super Spud, Inc.*, 77 B.R. 930, 932 (M.D. Fla. 1987) (emphasis added); *see In re Kennedy & Cohen, Inc.,* 612 F.2d 963, 965 (5th Cir. 1980); *see also In re Fresh Approach, Inc.,* 51 B.R. at 419; *C.H. Robinson v. Alanco Corp.*, 239 F.3d 483 (2d Cir. 2001) (payment to other creditors,

including to PACA debtor's counsel, prior to payment to PACA trust creditors, is not permitted under PACA).

## B.    Objections to the Cash Collateral and DIP Motions

24.    Certain PACA Creditors object to the provisions of the Cash Collateral and DIP Motions because the Motions fail to provide any payment to Debtors' pre-petition PACA Trust Creditors, while instead providing for superpriority liens and claims which prime all interests, and provide no protection to PACA trust creditors for the continued use of their trust assets. *Interim DIP Order*. Debtors and their DIP and other secured lenders cannot be allowed to eviscerate the PACA trust by providing for credit bidding by the lenders in the event of a sale of Debtors' assets, assets which are not part of the bankruptcy estate and to which Debtors do not hold equitable title. Nonetheless, the interests of PACA trust beneficiaries in trust assets cannot be trumped by secured creditors, and any Final DIP-Cash Collateral Order must so provide. 7 U.S.C. § 499e(c)(1); *Nickey Gregory Co., LLC v. AgriCap, LLC,* 597 F.3d at 598-599; *A & J Produce Corp.*, 542 F.3d at 58.

25.    In addition, the Interim Cash Collateral and DIP Orders, and interim Budget are all silent as to requiring <u>actual</u> payment of pre-petition PACA trust debt, and purport to allow payments to other parties, including secured creditors and professionals, thereby priming the interests of Certain PACA Creditors in PACA trust assets.

26.    Debtors and their DIP and Secured Lenders have agreed to establish a carve-out to provides for payment of court and Trustee fees, and professional fees, but do not include a carve out to protect the interests of PACA trust beneficiaries or to provide for payment to them. Instead, the DIP Lender apparently contends it has no liability for disgorgement of trust assets to Certain PACA Trust Creditors in the event these produce suppliers are not paid in full.

27.    Debtors cannot be allowed to subject payment of non-estate trust assets to the

control of its DIP lender, or to allow Debtors' loan agreements to prime the interests of trust beneficiaries in trust assets that are not part of the bankruptcy estates and thwart Congressional intent in enacting the PACA trust: to remedy a burden on commerce caused by commingled sales proceeds being diverted to secured lenders when produce suppliers remain unpaid. Debtors' secured obligations, ongoing operational expenses and professional fees cannot be paid to the detriment of Debtors' PACA trust creditors. Certain PACA Creditors and any similarly situated PACA beneficiaries must be paid their outstanding pre-petition PACA trust claims in full by a date certain, or in the alternative, funds sufficient to satisfy the PACA trust claims in full, including interest and attorneys' fees, must be set aside by Debtors. This Court must qualify and quantify the PACA trust claims of Certain PACA Creditors if the parties cannot informally agree on the amount of Certain PACA Creditors' trust claims.

28.    Certain PACA Creditors reserve the right to assert additional objections at the hearing on this matter.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Produce Alliance LLC, Brothers Produce, Inc., Brothers Produce of Austin, Inc., Coastal Sunbelt Produce, LLC, Get Fresh Produce, Inc.,, Gulf Coast Produce Distributors, Inc., Joe Granato, Inc. t/a Joe Granato Produce, Piazza Produce, LLC, PPINC., LLC d/b/a Premier Produce,  Premier Produce Central Florida, LLC t/a Downtown Produce, Sirna & Sons, Inc. t/a Sirna & Sons Produce, and Willie Itule Produce Inc.,  respectfully request that this Court enter an Order (i) sustaining the Omnibus Objection, (ii) denying or denying-in-part the Motions to the extent they are inconsistent herewith, (iii) requiring Debtors to segregate sufficient funds to pay Certain PACA Creditors and all other *bona fide* PACA trust beneficiaries in full for all pre-petition and post-petition produce purchases, including contractual

interest and attorneys' fees, (iv) establishing a shortened claims procedure by which the Court

qualifies and quantifies PACA trust claims asserted against Debtors; and (iv) granting to Certain

PACA Creditors such other and further relief as the Court deems just and proper.

FURR AND COHEN, P.A.
Attorney for PACA Creditors
2255 Glades Road, Suite 301East
Boca Raton, FL 33431
(561) 395-0500/(561)338-7532-fax

By /s/ Marc P. Barmat
MARC P. BARMAT
Florida Bar No. 0022365
email:  mbarmat@furrcohen.com

14