ORDERED.

**Dated:  June 16, 2020**

_____

Lori V. Vaughan
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov**

| | |
|---|---|
| **IN RE** | **CHAPTER 11** |
| **FOODFIRST GLOBAL RESTAURANTS, INC.,** *et al.*, | **CASE NO.: 6:20-bk-02159-LVV** |
| | **Jointly Administered**[1] |
| **Debtors.** | |

**ORDER (I) AUTHORIZING UNDER SECTIONS 105, 363, 365, 1107 AND 1108 OF THE BANKRUPTCY CODE, (A) THE SALE OF ASSETS PURSUANT TO THE PURCHASE AGREEMENT FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS THEREUNDER; (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) CONSUMMATION OF THE PURCHASE AGREEMENT AND RELATED DOCUMENTS; AND (II) GRANTING RELATED RELIEF**

**THIS CASE** came on for hearing on Wednesday, June 10, 2020 at 10:00 a.m (the

---

[1] The Debtors in these jointly administered cases are: Food First Global Restaurants, LLC, Case No. 6:20-bk-02159; FoodFirst Global Holdings, LLC, Case No. 6:20-bk-02161; Brio Tuscan Grille of Maryland, Inc., Brio Marlton, LLC, Case No. 6:20-bk- 02162; Brio Tuscan Grille of Baltimore, LLC, Case No. 6:20-bk-02164; Cherry Hill To, LLC, Case No. 6:20-bk-02166; Brio Tuscan Grille of Cherokee, LLC, Case No. 6:20-bk-02165; and Bravo Development of Kansas, Inc., Case No. 6:20-bk-02167.

"Hearing") upon the Motion for (I) Entry of an Order Authorizing, Under Sections 105, 363, 365, 1107 and 1108 of the Bankruptcy Code, (A) The Sale of Assets Pursuant to the Purchase Agreement Free and Clear of Liens, Claims and Interests Thereunder; (B) Assumption and Assignment of Executory Contracts and Unexpired Leases; (C) Consummation of the Purchase Agreement and Related Documents; and (II) Granting Related Relief (Doc. No. 241) (the "Sale Motion") filed by **FOODFIRST GLOBAL RESTAURANTS, INC.** and its affiliated debtors' (collectively, the "Debtors").  In the Sale Motion Debtors sought entry of an order (this "Order") pursuant to §§ 105, 362, 363, and 365, 1107 and 1108 approving the private sale (the "Sale") of substantially all assets of Debtors as described in the Purchase Agreement (the "Purchased Assets") and assumption and assignment of certain unexpired leases (the "Leases") and executory contracts, all as described in and subject to the terms and conditions of that certain Asset Purchase Agreement, to be effective as of April 10, 2020 (the "Purchase Agreement").[2]  At the Hearing, the Court also considered the following objections to the Motion filed at Doc Nos. 294, 296, 298, 299, 301, 308, 309 and 312 (collectively, the "Objections").  During the Hearing, counsel for Debtors' announced modifications in respect of: (a) the purchase price and cash consideration; (b) a modification of the Purchased Assets to include certain real property located at 8651 Castlecreek Parkway, Indianapolis, IN 33388 (the "Indiana Real Property"); (c) further procedures and requirements for lease assumption and assignment ("Lease Assignment Procedures"); (d) treatment of actions under 11 U.S.C. 547 (the "Preference Actions"); (e) transfer of a liquor license in respect of Cherry Hill Two, LLC. (the "Cherry Hill Liquor License"); and (f) treatment of an executory contract with Chubb Insurance Company (the "Insurance Contract") (collectively, (a) through (f) referred to as, the "Modifications"). The details of the Modifications will be set forth

---

[2] Except as otherwise defined herein, or where reference is made to a definition in the Sale Motion, all capitalized terms shall have the meanings ascribed to them in the Purchase Agreement.

below. Upon consideration of the Motion, the Objections, the Modifications, the Purchase Agreement (a copy of which was introduced as Exhibit 1 at the Hearing), the proffered testimony of Mr. Robert Morrison, the CRO of Debtors, the record of the Hearing and all other pleadings and proceedings in these Bankruptcy Cases; and notice of the Sale Motion and the Hearing being just and proper under the circumstances and no further notice being deemed necessary or required; and all objections to the Sale Motion being resolved, adjourned, withdrawn or overruled; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors, their employees (both current and recently terminated), their other stakeholders, and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT**:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    The Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Purchased Assets to be sold, transferred, or conveyed pursuant to the Agreement, pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2). Venue of these Bankruptcy Cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    This Order constitutes a final and appealable order within the meaning of 28

U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

E.      The statutory basis for the relief requested in the Sale Motion and for the approvals and authorizations herein are (i) Bankruptcy Code §§ 105, 362, 363 and 365, (ii)Bankruptcy Rules 2002, 4001, 6004, 6006, 9007, 9014 and 9019, and (iii) Local Bankruptcy Rule 6004-1.

F.      On April 10, 2020 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

G.      As evidenced by the certificates of service filed with the Court, proper, timely, adequate, and sufficient notice of, and a reasonable opportunity to object and/or be heard regarding, the Sale Motion, the transactions contemplated by the Purchase Agreement (the "Transactions"), and the Hearing have been provided in accordance with Bankruptcy Code §§ 102(1) and 363(b), the applicable Bankruptcy Rules, and the applicable Local Bankruptcy Rules, and the procedural due process requirements of the United States Constitution. The Debtors also gave due and proper notice of the potential assumption, sale, and assignment of the contracts listed on the Notice of Assumed Restaurant Leases and Contracts (the "Assumed Contracts") filed by Debtors on June 8, 2020 (Doc. No. 300) (the "Assumed Contract Notice") to each non-debtor counterparty under each Assumed Contract. No other or further notice of the Sale Motion, the Hearing, the Purchase Agreement, the sale of the Purchased Assets free and clear of all Liens, the Transactions, the assumption and assignment of the Assumed Contracts, or of the entry of

this Order is necessary or shall be required, except as set forth herein.  For the avoidance of doubt, with respect to this Order, Leases that are not Agreed Leases shall not constitute Assumed Contracts and Leases shall not be considered Purchased Assets.

H.     The Debtors have demonstrated a sufficient basis and the existence of reasonable and appropriate circumstances, including the outbreak and persistence of the global COVID-19 pandemic, permitting them to enter into the Purchase Agreement, sell the Purchased Assets, and assume and assign the Assumed Contracts under Bankruptcy Code §§ 363 and 365, and such actions are appropriate exercises of the Debtors' sound and reasonable business judgment, are consistent in all respects with the Debtors' fiduciary duties, and are in the best interests of the Debtors, their estates, their creditors, their employees (both current and recently terminated), their other stakeholders, and all other parties in interest. Such circumstances include, but are not limited to, the fact that (i) there is a substantial risk of deterioration of the value of the Purchased Assets if the Transactions are not consummated quickly, (ii) the Purchase Agreement and the Closing present the best opportunity to realize the value of the Purchased Assets on a going concern basis, to avoid a permanent shutdown of the Debtors' businesses, (iii) the successful going concern sale of the Purchased Assets to the Buyer will maximize the opportunity for the reinstatement of jobs to the extent the restaurants comprising the Purchased Assets are able to re-open, (iv) the Debtors have not received any material interest from any other prospective purchasers for the Purchased Assets, and the Purchase Agreement constitutes the highest and best offer for the Purchased Assets, and (v) unless the sale of the Purchased Assets is concluded expeditiously as provided for in the Sale Motion and the Purchase Agreement, then stakeholders' recoveries will likely be diminished.

I.     The offer of the Buyer, upon the terms and conditions set forth in the Purchase

Agreement and this Order, including the form and total consideration to be realized by the Debtors pursuant to the Purchase Agreement, (i) is the highest or best offer received by the Debtors, (ii) is fair and reasonable, (iii) is in the best interests of the Debtors' estates, creditors, employees (both current and recently terminated), stakeholders, and parties in interest, (iv) constitutes full and fair consideration and reasonably equivalent value for the Purchased Assets, and (v) will provide a greater recovery for the Debtors' creditors, stakeholders and other interested parties than would be provided by any other practically available alternative under the circumstances.

J.      The Buyer is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code. The Buyer is a purchaser in "good faith," as that term is used in the Bankruptcy Code, is an assignee in good faith of the Assumed Contracts, and is, therefore, together with the Debtors, entitled to the protection of Bankruptcy Code § 363(m) with respect to the Purchased Assets (including the Assumed Contracts). The Purchase Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind. Neither the Debtors nor the Buyer have engaged in any conduct that would prevent the application of Bankruptcy Code § 363(m) or cause the application of, or implicate, Bankruptcy Code § 363(n) to the Agreement or to the consummation of the Transactions and transfer of the Purchased Assets and Assumed Contracts to the Buyer. Additionally, the Buyer otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets, (ii) all consideration to be paid by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the sale have been disclosed, (iii) the Buyer has not violated Bankruptcy Code § 363(n) by any action or

inaction, and (iv) the negotiation and execution of the Purchase Agreement and any other agreements or instruments related thereto was in good faith.

K.    The Sellers have full corporate authority to execute the Purchase Agreement (and all other documents contemplated thereby) and to consummate the Transactions, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate, limited liability partnership and other actions on the part of the Sellers. No consents or approvals, other than as may be expressly provided for in the Purchase Agreement, are required by the Sellers to consummate such Transactions.

L.    The Debtors have advanced sound business reasons for seeking to enter into the Purchase Agreement and to sell and/or assume and sell and assign the Purchased Assets, as more fully set forth in the Sale Motion and as demonstrated at the Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Purchased Assets and to consummate the Transactions contemplated by the Purchase Agreement. Notwithstanding any requirement for approval or consent by any Person, the transfer of the Purchased Assets to the Buyer and the assumption and assignment of the Assumed Contracts is a legal, valid, and effective transfer of the Purchased Assets (including the Assumed Contracts); however assumption and assignment is subject to the Lease Assignment Procedures set forth below.

M.    The terms and conditions of the Purchase Agreement, including the total consideration to be realized by the Sellers pursuant to the Purchase Agreement, are fair and reasonable, and the Transactions contemplated by the Purchase Agreement are in the best interests of the Debtors' estates.

N.    The Purchased Assets shall be sold free and clear of any and all liens, Claims (as defined in Bankruptcy Code § 101(5)), liabilities (including any liability that results from, relates

to or arises out of tort or any other product liability claim), duty, responsibility, obligation, commitment, assessment, cost, expense, loss, expenditure, charge, fee, penalty, fine, contribution, premium, encumbrance and interest of any kind or nature whatsoever, including, without limitation, all liens, mechanics' liens, materialmens' liens, consensual liens, non-consensual liens, statutory liens, hypothecations, encumbrances, security interests, mortgages, security deeds, deeds of trust, debts, levies, indentures, pledges, restrictions (whether on voting, sale, transfer, disposition or otherwise), charges, leases, licenses, easements, rights of way, encroachments, instruments, preferences, priorities, security agreements, conditional sales agreements, title retention contracts and other title retention agreements and other similar impositions, options, judgments, offsets, rights of recovery, rights of pre-emption, rights of setoff, rights of first refusal, other third party rights, other impositions, imperfections or defects of title or restrictions on transfer or use of any nature whatsoever, claims for reimbursement, claims for contribution, claims for indemnity, claims for exoneration, products liability claims, alter-ego claims, successor-in-interest claims, successor liability claims, substantial continuation claims, COBRA claims, withdrawal liability claims (including under any Employee Benefit Plan), environmental claims, claims under or relating to any Employee Benefit Plan, ERISA affiliate plan, or ERISA (including any pension or retirement plan), WARN claims or any claims under state or other laws of similar effect, Tax claims (including claims for any and all foreign, federal, state and local Taxes), escheatment claims, reclamation claims, obligations, liabilities, demands, and guaranties, whether any of the foregoing are known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, secured or unsecured, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material,

disputed or undisputed, whether arising prior to or subsequent to the commencement of the Bankruptcy Cases, and whether imposed by agreement, understanding, Law, equity or otherwise, including claims otherwise arising under doctrines of successor liability, successor-in-interest liability, continuation liability or substantial continuation liability including, without limitation, that the Buyer is in any way a successor, successor-in-interest, continuation or substantial continuation of the Debtors or their businesses (collectively, the "Liens"), other than the Permitted Liens, the Assumed Liabilities and the agreements and obligations set forth in this Order and in the Purchase Agreement. The Buyer would not have entered into the Purchase Agreement and would not have agreed to purchase and acquire the Purchased Assets, if the sale of the Purchased Assets was not free and clear of any and all Liens (other than Permitted Liens and Assumed Liabilities).

O.     Liens (other than the Permitted Liens and Assumed Liabilities) shall attach to the consideration to be received by the Sellers in the same priority and subject to the same defenses and avoidability, if any, as before the Closing.

P.     The transfer of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets and shall vest the Buyer with all right, title, and interest of the Sellers to the Purchased Assets free and clear of any and all Liens (other than the Permitted Liens and Assumed Liabilities). Except as specifically provided in the Purchase Agreement or as otherwise set forth in this Order, the Buyer shall not assume or become liable for any Liens other than the Permitted Liens and Assumed Liabilities.

Q.     The Purchase Agreement is a valid and binding contract between the Sellers and the Buyer and shall be enforceable pursuant to its terms. From and after the Closing Date, the Purchase Agreement and the Transactions and the consummation thereof shall be specifically

enforceable against and binding upon (without posting any bond) the Debtors and any chapter 11 trustee appointed in these Bankruptcy Cases, or in the event the Bankruptcy Cases are dismissed or converted to a case under chapter 7 of the Bankruptcy Code, a chapter 7 trustee, and shall not be subject to rejection or avoidance by any Person.

R.      The transfer of the Purchased Assets to the Buyer free and clear of all Liens (other than the Permitted Liens and Assumed Liabilities or as otherwise set forth in this Order) will not result in any undue burden or prejudice to any holders of any Liens, because all such Liens of any kind or nature whatsoever shall attach to the net proceeds of the sale of the Purchased Assets received by the Sellers in the order of their priority, with the same validity, force, and effect which they now have as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. All Persons having Liens of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets are and shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens (other than the Assumed Liabilities and Permitted Liens; for purposes of this Order, Permitted Liens shall mean the Liens on the Purchased Assets granted to City National Bank ("CNB") by the Buyers in respect of the Sale Closing Deliverable (as defined in the Interim DIP Order dated May 7, 2020 (the "DIP Order")) against the Buyer, any of its assets, property, successors or assigns, or the Purchased Assets.

S.      The Sellers may sell the Purchased Assets free and clear of all Liens of any kind or nature whatsoever (other than the Permitted Liens and Assumed Liabilities) because, in each case, one or more of the standards set forth in Bankruptcy Code § 363(f) has been satisfied. Those holders of Liens in or with respect to the Purchased Assets have consented pursuant to Bankruptcy Code § 363(f)(2). Except as otherwise set forth in this Order, all objections to the

Sale Motion have been withdrawn, adjourned, overruled or resolved as set forth in this Order. Those holders of Liens in or with respect to the Purchased Assets who did object or whose objections were overruled, fall within one or more of the other subsections of Bankruptcy Code § 363(f) and are adequately protected by having their Liens, if any, attach to the proceeds of the sale of the Purchased Assets ultimately attributable to the property against or in which they claim or may claim any Liens, with such Liens being subject to treatment as may be prescribed in the Debtors' chapter 11 plan or by separate order of this Court, or by delivery of the Sale Closing Deliverable to CNB under the Purchase Agreement and the other adequate protection provided to CNB as set forth in the DIP Order.

T.      Not selling the Purchased Assets free and clear of all Liens (other than the Permitted Liens and Assumed Liabilities) would adversely impact the Debtors' estates, and a sale of the Purchased Assets other than one free and clear of all Liens (other than the Permitted Liens and Assumed Liabilities) would be of substantially less value to the Debtors' estates.

U.      The Lease Assignment Procedures set forth in paragraph 24 of this Order fully preserve the rights and objections of all landlords in respect of cure, assumption and assignment, and adequate assurance of future performance.  However, the Lease Assignment Procedures also allow assumption and assignment of the Leases to the extent a respective landlord has agreed, in writing, to the terms of the assignment (the "Agreed Leases").  Solely with respect to the Agreed Leases and not with respect to any other Leases, the Debtors and the Buyer have, to the extent necessary, satisfied the requirements of Bankruptcy Code § 365, including Bankruptcy Code §§ 365(b)(1)(A), (B) and 365(f), in connection with the sale and the assumption and assignment of the Agreed Leases. The Buyer has demonstrated adequate assurance of future performance with respect to the Agreed Leases pursuant to Bankruptcy Code § 365(b)(1)(C).  No findings in respect

of the Agreed Leases shall be binding on, and all defenses shall be preserved for, any landlord who has not consented in writing and pursuant to a fully executed agreement to assignment.

V.      The Leases subject to the Agreed Leases are assignable notwithstanding any provisions contained therein that may prohibit, restrict, or condition such assignment. The Buyer shall have the sole responsibility for paying all Cure Amounts (as defined below) required to assume and assign the Assumed Contracts to the Buyer, unless stated otherwise herein.

W.      The Buyer has acted in good faith, pursuant to Bankruptcy Code § 363(m), and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

X.      The Transactions do not amount to or constitute a consolidation, merger, or de *facto* merger of the Buyer and the Debtors or the Debtors' estates, there is not substantial continuity between the Buyer and the Debtors or the Debtors' estates, there is no continuity of enterprise between the Buyer and the Debtors or the Debtors' estates, the Buyer is not a continuation or substantial continuation of the Debtors or their estates, the Buyer is not a successor or successor-in-interest to the Debtors or their estates, and the Buyer is not an alter ego of any of the Debtors or their estates.

Y.      The total consideration provided by the Buyer for the Purchased Assets was the highest or best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets.

Z.      Time is of the essence in consummating the sale. There is no credible basis for

concluding that a delay in the sale of the Purchased Assets would result in a higher or better offer for the Purchased Assets than the offer reflected in the Purchase Agreement. In order to maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Purchase Agreement. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004(h) and 6006(d).

AA.    At and effective as of the Closing, the Buyer shall assume responsibility for paying and satisfying the Assumed Liabilities as provided in the Purchase Agreement. For the avoidance of doubt, nothing in this Order (including, without limitation, any provisions in this Order regarding the sale, transfer or conveyance of the Purchased Assets free and clear of Liens) nor in the Purchase Agreement shall be construed to mean that the Buyer is not assuming from the Debtors and thereafter becoming responsible for the payment, performance and discharge of the Assumed Liabilities as provided in the Purchase Agreement. After the Closing and upon payment of the applicable Cure Amount, the Debtors shall have no liability whatsoever with respect to the Assumed Liabilities except to the extent set forth in the Purchase Agreement and as otherwise set forth in this Order. The Buyer shall have no obligations or responsibility whatsoever with respect to any claims against the Debtors (including, without limitation, the Excluded Liabilities) other than the Assumed Liabilities and any other obligations under this Order.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief requested in the Sale Motion is granted as set forth herein, the Modifications are approved, and the Purchase Agreement and the provisions thereof and the Transactions contemplated therein are approved in their entirety, subject to the terms and conditions contained herein.

2.    Notice of the Sale Motion, the Hearing, the Agreement, the sale of the Purchased

Assets free and clear of all Liens, the Transactions, and the assumption and assignment of the Agreed Leases are reasonable, fair and equitable under the circumstances and complied in all respects with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.

3.     The sale of the Purchased Assets, the terms and conditions of the Purchase Agreement (including all schedules and exhibits affixed thereto), and the Transactions are hereby authorized and approved in all respects.  As announced at the Hearing and as reflected in the Purchase Agreement, the Buyer has agreed to, upon entry of this Order, escrow with Debtors' counsel (Shuker & Dorris, P.A.) the sum of $500,000 to be used for payment of allowed administrative claims, including the claims of CNB in respect of reimbursement of its legal fees as set forth in paragraphs 12 and 37 of the DIP Order (the "Administrative Escrow").  Upon Debtor's filing of a motion to dismiss each of the chapter 11 cases with a list of proposed administrative claims (to be filed no later than July 1, 2020), the Buyer will increase the sum of the Administrative Escrow by $300,000 so that the total Administrative Escrow will be $800,000. If, upon entry of an order granting said motion to dismiss and setting forth the allowed administrative claims, the allowed amount is in excess of Eight Hundred Thousand Dollars ($800,000), the Buyer will use the first proceeds of the sale of the Indiana Real Property to increase the sum of the Administrative Escrow, but in no event will the sum of the Administrative Escrow exceed $ 1,050,000.  Buyer will have six (6) months to sell the Indiana Real Property proceeds and remit the required proceeds and, failing such, will increase the balance on a date (up to the $1,050,000 cap) no later than January 10, 2021.

4.     The sale of the Purchased Assets and the consideration provided by the Buyer under the Purchase Agreement are fair and reasonable and shall be deemed for all purposes to constitute

a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable Law.

5.     The Buyer is hereby granted and is entitled to all of the protections provided to a good faith purchaser under Bankruptcy Code § 363(m), including, without limitation, with respect to all of the Transactions (including the transfer of the Agreed Assignments as part of the sale of the Purchased Assets pursuant to Bankruptcy Code § 365 and this Order).

6.     The Debtors shall be, and hereby are, authorized and directed to fully assume, perform under, consummate, and implement the terms of the Purchase Agreement together with any and all additional instruments and documents that may be necessary or desirable in connection with implementing and effectuating the terms of the Purchase Agreement, this Order, and/or the sale of the Purchased Assets including, without limitation, bills of sale, certificates, deeds, assignments, and other instruments of transfer, and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to possession, any or all of the Purchased Assets or Agreed Leases, as may be necessary or appropriate to the performance of the Sellers' obligations as contemplated by the Purchase Agreement, without any further corporate, limited liability partnership, or other action or orders of this Court.

7.     The Sellers and each other Person having duties or responsibilities under the Purchase Agreement, any agreements or instruments related thereto or this Order, and their respective directors, officers, employees, members, managers, partners, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Purchase Agreement and this Order, to carry out all of the provisions of the Purchase Agreement and any related agreements or instruments; to issue, execute, deliver, file, and record,

as appropriate, the documents evidencing and consummating the Purchase Agreement and any related agreements or instruments; to take any and all actions contemplated by the Purchase Agreement, any related agreements or instruments, or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, termination statements, indentures, mortgages, quitclaim deeds, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary, desirable or appropriate to implement, effectuate, and consummate, the Purchase Agreement, any related agreements or instruments, this Order and the Transactions, all without further application to, or order of, the Court or further action by their respective directors, officers, employees, members, managers, partners, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, managers, partners, agents, representatives, and attorneys of such entities. The secretary or any assistant secretary of each Debtor (or any comparable officer) shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Sellers are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Entity any and all certificates, agreements, or amendments necessary or appropriate to effectuate the Transactions and this Order, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable Laws of all applicable Governmental Entities or as any of the officers of the Sellers may determine are necessary, desirable or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person

to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the applicable state's corporate laws and all other applicable business, corporation, non-profit, limited liability partnership, trust, and other Laws of the applicable Governmental Entities with respect to the implementation and consummation of the Purchase Agreement, any related agreements or instruments, this Order, and the Transactions.

8.      Effective as of the Closing and except as otherwise set forth herein, (a) the sale of the Purchased Assets by the Sellers to the Buyer shall constitute a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any Person and shall vest the Buyer with good, valid and marketable title in and to the Purchased Assets, free and clear of any and all Liens of any kind or nature whatsoever (other than the Permitted Liens and Assumed Liabilities) pursuant to Bankruptcy Code § 363(f), and (b) the assumption of the Assumed Liabilities by the Buyer shall constitute a legal, valid and effective delegation and assignment of all Assumed Liabilities to the Buyer and shall divest the Sellers of all liability with respect to any Assumed Liabilities.

9.      The sale of the Purchased Assets is not subject to avoidance by any Person or for any reason whatsoever, including, without limitation, pursuant to Bankruptcy Code § 363(n).

10.      At the Closing and except as otherwise stated herein, the Sellers shall be, and hereby are, authorized, empowered, and directed, pursuant to Bankruptcy Code §§ 105, 363(b), 363(f) and 365, to take any and all actions necessary or appropriate to sell the Purchased Assets and to assume and assign the Agreed Leases to the Buyer. The sale of the Purchased Assets shall vest the Buyer with all right, title and interest of the Sellers to the Purchased Assets free and clear of any and all Liens (other than the Permitted Liens and Assumed Liabilities or as

otherwise set forth herein), with all such Liens to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Purchased Assets, subject to all claims and defenses the Sellers and their estates may possess with respect thereto. Following the Closing Date, no holder of any Liens in the Purchased Assets (other than the holders of Permitted Liens and Assumed Liabilities) shall interfere with the Buyer's use and enjoyment of the Purchased Assets based on or related to such Liens, or any actions that the Debtors may take in the Bankruptcy Cases. All Persons having Liens of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets are forever barred and estopped from pursuing or asserting any such Liens (other than the Holders of Permitted Liens and the Assumed Liabilities or as otherwise set forth herein) against the Buyer, any of the Buyer's assets, property, successors or assigns, or the Purchased Assets.

11.    The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Liens (other than the Permitted Liens and Assumed Liabilities) shall be self-executing, and neither the Sellers nor the Buyer shall be required to execute or file releases, termination statements, assignments, notices of assignment, assumptions, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order. However, the Sellers and the Buyer, and each of their respective officers, employees, and agents, are hereby authorized and empowered to take all actions and to execute and deliver any and all documents and instruments that either the Sellers or the Buyer deem necessary, desirable or appropriate to implement and effectuate the terms of the Agreement and this Order.

12.    On or before the Closing Date, the Sellers' creditors are authorized to execute such documents and take all other actions as may be necessary to release any Liens (other than the Permitted Liens) of any kind against the Purchased Assets, as such Liens may have been

recorded or may otherwise exist and deliver such executed documents to the Sellers' counsel to be held in escrow. If any Person that has filed financing statements, mortgages or other documents, instruments or agreements evidencing any Liens in or against the Purchased Assets (other than the Permitted Liens) shall not have delivered to the Sellers' counsel prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens that the Person has with respect to the Purchased Assets, the Debtors and each of the Debtors' officers and agents are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the Person with respect to such Purchased Assets at Closing, and the Buyer and each of the Buyer's officers and agents are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the Person with respect to such Purchased Assets after the Closing.  In addition, after Closing, the Buyer and the Sellers and their respective agents are authorized to file a copy of this Order in the appropriate real estate records, the secretary of state records and any other filing location selected by the Buyer or the Sellers and, once filed, this Order shall constitute conclusive evidence of the release of all Liens (other than Permitted Liens) from the Purchased Assets.

13.    To the greatest extent available under applicable law, (a) the Buyer shall be authorized, as of the Closing Date, to operate under any license (including Liquor License), permit, approval, certificate of occupancy, certificate of need, authorization, accreditation, operating permit, registration, plan and the like of any Governmental Entity relating to the Purchased Assets (collectively, the "Permits"), (b) all such Permits are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing Date, and (c) each Governmental Entity that has issued or granted a Permit to, or for the benefit of, the Sellers

shall be deemed to have consented to the transfer of such Permit to the Buyer as of the Closing Date.

14.    All of the Sellers' interests in the Purchased Assets to be acquired by the Buyer under the Purchase Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Buyer. Upon the occurrence of the Closing, this Order shall be considered and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets acquired by the Buyer under the Purchase Agreement and/or a bill of sale, deed, or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Buyer.

15.    Except as otherwise set forth herein, the Buyer is not assuming nor shall it or any Affiliate of the Buyer be in any way liable or responsible, as a successor, successor-in-interest, continuation, substantial continuation, alter ego or otherwise, for any claims, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Assets prior to the consummation of the Transactions, or any claims or liabilities calculable by reference to the Debtors or their operations or the Purchased Assets, or relating to continuing or other conditions existing on or prior to consummation of the Transactions, which liabilities, claims, debts, and obligations are hereby completely and utterly extinguished insofar as they may give rise to any liability, whether successor, successor-in-interest, continuation, substantial continuation, alter ego or otherwise, against the Buyer or any of the Buyer's current and former shareholders, members, managers, officers, directors, attorneys, employees, partners, Affiliates, financial advisors, agents or representatives.

16.    Subject to the terms of the Purchase Agreement and this Order, the occurrence

of the Closing Date, and payment of the applicable Cure Amount (as defined below), the assumption by the Debtors of the Agreed Leases and the sale and assignment of such Leases to the Buyer, as provided for or contemplated by the Purchase Agreement, are hereby authorized and approved pursuant to Bankruptcy Code §§ 363 and 365, effective as of the Closing Date.

17.    The Agreed Leases shall be deemed valid and binding and in full force and effect and assumed by the Debtors and sold and assigned to the Buyer at the Closing, pursuant to Bankruptcy Code §§ 363 and 365, subject only to the payment of the Cure Amounts (as defined below).

18.    Upon the Closing, in accordance with Bankruptcy Code §§ 363 and 365, the Buyer shall be fully and irrevocably vested in all right, title, and interest in and to each Agreed Leases. The Sellers shall reasonably cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

19.    All defaults under the Agreed Leases arising prior to the Closing (without giving effect to any acceleration clauses, assignment fees, increases, advertising rates, or any other default provisions of the kind specified in Bankruptcy Code § 365(b)(2)) that are required to be cured pursuant to Bankruptcy Code §§ 365(b)(1)(A) or (B) shall be deemed cured by payment of the related Cure Amounts (as defined below), other than a default of a nonmonetary obligation of the kind set forth in Bankruptcy Code § 365(b)(1)(A) applicable to nonresidential real property leases, unless such constitutes an Assumed Liability under the terms of the Purchase Agreement or this Order.

20.    Any provision in any Agreed Leases that purports to declare a breach, default, or payment right as a result of an assignment or a change of control in respect of the Debtors

is deemed unenforceable in connection with the assumption and assignment of the Agreed Lease as contemplated in this Order, and all Agreed Leases shall remain in full force and effect, subject only to payment of the appropriate Cure Amounts (as defined below), if any. No sections or provisions of any Agreed Leases that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor party to the Agreed Leases shall have any force and effect with respect to the Transactions and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code § 365(f) and/or are otherwise unenforceable under Bankruptcy Code § 365(e) for the purposes of this Transaction and no assignment of any Agreed Leases pursuant to the terms of the Purchase Agreement shall in any respect constitute a default under any Agreed Leases. The non- debtor party to each Agreed Leases shall be deemed to have consented to such assignment under Bankruptcy Code § 365(c)(1)(B), and the Buyer shall enjoy all of the Debtors' rights and benefits under each such Agreed Leases as of the applicable date of assumption without the necessity of obtaining such non-debtor party's consent, written or otherwise, to the assumption or assignment thereof.

21.     The Debtors and Buyer have satisfied all requirements under Bankruptcy Code §§ 365(b)(1)(C) and 365(f)(2)(b) to provide adequate assurance of future performance under the Agreed Leases.

22.     Except as otherwise set forth in this Order or the Purchase Agreement, the Debtors and their estates shall be relieved of any liability under the Agreed Leases occurring from and after the Closing for such obligations arising after the Closing upon payment of the applicable Cure Amounts (as defined below), pursuant to and in accordance with

Bankruptcy Code § 365(k), and the Buyer shall be deemed to be substituted for the applicable Debtor as a party to the applicable Agreed Leases. For avoidance of doubt, nothing in this Order or the Purchase Agreement shall relieve the Debtors of their obligations under section 365(d)(3) of the Bankruptcy Code that arise prior to the assumption and assignment of the Leases to the Buyer at the Closing, including but not limited to indemnification obligations, if any, arising from third-party claims asserted with respect to or arising from the Debtors' use and occupancy of the Premises prior to the Closing for which the Debtors had a duty to indemnify the Landlord pursuant to the Leases, solely with respect to available insurance coverage.

23.    Pursuant to Bankruptcy Code §§ 105(a), 363, and 365, all parties to the Agreed Leases are forever barred from raising or asserting against the Buyer any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Agreed Leases existing as of the Closing or arising by reason of the Closing, except for any amounts that are Assumed Liabilities being assumed by the Buyer under the Purchase Agreement or this Order.

24.    The following Lease Assignment Procedures, as announced at the Hearing are approved:

- Each Lease assumption and assignment is subject to definitive documentation;

- Any Lease listed in the Assumed Contracts Notice with "Per Agreement of Parties" for cure amount, may be assumed and assigned without further court order upon the parties execution of agreed assignment documents (collectively, the "Agreed Leases"); provided, however, any landlord with an Agreed Leases who requests a separate Court order in respect of such assignment may obtain such and upload an agreed order reflecting the assignment;

- Any Lease: (i) listed in the Assumed Contracts Notice with "TBD" for cure amount; or (ii) listed as "Per Agreement of Parties" but for which a respective written agreement is not reached by June 19, 2020, will not be assigned pursuant to this Order, nor impacted by any

of the findings herein (collectively (i) and (vii) referred to as the "Pending Assignment Leases");

- No later than June 19, 2020, Debtors will file a supplemental notice containing a list of each of the Pending Assignment Leases noting either "Per Agreement of Parties" or, for the leases without a written agreement, a specific proposed cure amount;

- Any landlord who objects to the proposed cure amount or disagrees that an agreement has been reached, will file an objection by no later than June 22, 2020; and

- All unresolved issues relating to the assumption and assignment of Lease will be considered at a hearing on June 24, 2020 at 10:00 a.m. (the "Assignment Hearing").

25.    Debtors and Buyer will provide expedited discovery responses in advance of the Assignment Hearing and the Evidentiary Hearing (as defined below).  For any unresolved issue requiring an evidentiary hearing, the Assignment Hearing will be a status conference and a separate evidentiary hearing will be scheduled subsequent to the Assignment Hearing for each unresolved lease assignment (each, an "Evidentiary Hearing").

26.    In connection with the assumption by the Debtors and assignment to the Buyer of any Agreed Leases pursuant to the Purchase Agreement, (i) the agreed amounts, if any, necessary to cure all pre-petition and post-petition monetary defaults, if any, and to pay all actual pecuniary losses, if any, that have resulted from such defaults under the Agreed Leases (collectively, such amounts, the "Cure Amounts"), shall be paid by the Buyer based upon the agreement of the parties to the respective Agreed Lease, and neither the Cure Amounts paid by the Buyer nor any other expense or obligation set forth in the Purchase Agreement shall reduce, directly or indirectly, any consideration payable to the Sellers under the Purchase Agreement and (ii) solely with respect to contracts that are Agreed Leases , the Debtors and the Buyer have provided sufficient evidence adequate assurance of future performance as of the Hearing necessary to satisfy the conditions contained in Bankruptcy

Code §§ 365(b)(1)(C) and 365(f) with respect to such Agreed Lease.

27.     As to only the Agreed Leases, payment of the Cure Amounts as set forth in the forgoing paragraph shall be in full satisfaction and cure of any and all defaults that are required to be cured by Bankruptcy Code §§ 365(b)(1)(A) and (B). Upon the occurrence of the Closing and payment of the relevant Cure Amounts in accordance with the Purchase Agreement, the Debtors and their estates shall have no further liabilities to the non-debtor parties to the Agreed Leases that accrue and become due and payable on or after the Closing except as provided in the Purchase Agreement or as otherwise set forth in this Order. Each non-debtor party to an Agreed Leases sis forever barred and estopped from asserting against the Sellers, their estates or the Buyer, their successors or assigns, or their property, any default existing as of the date of the Hearing if such default was not timely raised or asserted prior to or at the Hearing; provided, however, nothing in this Order or the Purchase Agreement shall prevent non-debtor parties to Agreed Leases  from seeking indemnification for third party claims related to events and circumstances that occurred prior to the Closing from the Debtors' applicable insurance policies. For the avoidance of doubt and notwithstanding anything in this Order to the contrary, with respect to any claims that landlords or their agents have or may have in the future against the Debtors for which the Debtors maintained insurance covering such claims (for example, for personal injury claims or indemnification claims related to events occurring on the leased premises prior to the Closing), nothing in this Order shall prevent the landlords or their agents from making claims and seeking recovery from such insurance policies and proceeds, and nothing in this Order shall be deemed to terminate such insurers' obligations under such insurance policies (regardless of whether the claims are made before or after entry of this Order or the

assignment of the leases). Notwithstanding anything in this Order to the contrary, the Buyer shall be responsible for the payment of any accrued but unbilled obligations with respect to year-end adjustments or reconciliations (including, but not limited to, 2020 reconciliations) when billed in accordance with the terms of the Agreed Leases that become due and owing after the Closing regardless of whether such amounts related to pre-Closing or post-Closing periods.

28.     Upon the Sellers' assumption and assignment of the Agreed Leases to the Buyer, no counterparty thereof shall be permitted to declare a default by any Debtor or the Buyer, or otherwise take any action against the Buyer, as a result of any Debtors' financial condition, bankruptcy, or failure to perform its obligations under the relevant Agreed Leases. Any provision in an Agreed Lease that prohibits or conditions the assignment or sublease of such Agreed Lease or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition as a result of the assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect, but only in connection with the assumptions and assignments authorized in accordance with this Order.

29.     Each and every federal, state, and local governmental agency or department (including each Governmental Entity) is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Purchase Agreement and this Order. This Order and the Purchase Agreement shall govern the acts of all such federal, state, and local governmental agencies and departments, including any filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other Persons and entities who may be required by operation of Law, the duties of their office,

or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets, and each such entity is hereby authorized to accept this Order for recordation as conclusive evidence of the free, clear, and unencumbered transfer of title to the Purchased Assets conveyed to the Buyer pursuant to the Purchase Agreement.

30.    To the maximum extent permitted by Bankruptcy Code § 525, no Governmental Entity may revoke or suspend any Permit relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these Bankruptcy Cases.

31.    The Buyer has not assumed and is not otherwise obligated for any of the claims against the Debtors (including, without limitation, the Excluded Liabilities) other than the Assumed Liabilities as set forth in the Purchase Agreement or this Order, and the Buyer has not purchased any of the Excluded Assets as set forth in the Agreement. Consequently, all Persons, Governmental Units (as defined in Bankruptcy Code §§ 101(27) and 101(41)) and all holders of Liens (other than the holders of Permitted Liens) based upon or arising out of claims retained by the Debtors are hereby barred and estopped from taking any action against the Buyer or any of its Affiliates or the Purchased Assets to recover any Liens or on account of any claims against the Debtors other than Assumed Liabilities pursuant to the Purchase Agreement or this Order. All Persons holding or asserting any Liens in or relating to the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens or any cause of action against the Buyer or any of its Affiliates or the Purchased Assets for any Liens associated with the Excluded Assets.

32.    The Buyer is not a "successor," "successor-in-interest," "continuation," "alter

ego" or "substantial continuation" to or of the Debtors or their estates by reason of any theory of Law or equity whatsoever, and the Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability, claim or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales Law, successor liability, successor-in-interest liability, substantial continuation liability, alter ego liability, or similar liability except to the extent expressly included in the Assumed Liabilities or provided in the Purchase Agreement or this Order. Neither the purchase of the Purchased Assets by the Buyer, nor the fact that the Buyer is using any of the Purchased Assets previously operated by the Debtors, will cause the Buyer or any of its Affiliates to be deemed a successor, successor-in-interest, continuation, alter ego, or substantial continuation in any respect to the Debtors' business within the meaning of any foreign, federal, state or local law, rule, doctrine or regulation, including, without limitation, revenue, pension, ERISA, COBRA coverage, Family Medical Leave Act of 1933, Worker Adjustment and Retraining Notification of 1988 ("WARN"), IRC, Tax, labor, employment, environmental, or other Law, rule or regulation (including, without limitation, filing requirements under any such Laws, rules or regulations), or under any products liability Law or doctrine with respect to the Debtors' liability under such Law, rule or regulation or doctrine, except to the extent expressly included in the Assumed Liabilities or provided in the Agreement.

33.     For the avoidance of doubt, transfer of title and possession of the Purchased Assets shall be free and clear of any claims and other Liens pursuant to any successor, successor- in-interest, continuation, alter ego or substantial continuation theory, including, without limitation, the following: (a) any employment or labor agreements, (b) any deeds of trust, security deeds, mortgages, liens, and security interests, (c) any pension or medical benefit

plan of the Debtors, compensation or other Employee Benefit Plan of the Debtors, welfare, agreements, practices and programs, (d) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims and other Liens that might otherwise arise under or pursuant to (i) ERISA, (ii) the Fair Labor Standards Act of 1938, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act of 1935, (vi) WARN or any state or other Law of similar effect, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act of 1967 (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination Laws, (xi) state unemployment compensation Laws or any other similar state Laws, or (xii) any other state or federal benefits or claims and other Liens relating to any employment with the Debtors or any predecessors (each of (d)(i)-(xii) as amended or may be amended from time to time), (e) environmental or other claims and other Liens arising from existing conditions on or prior to the Closing (including, without limitation, the presence of a Hazardous Substance) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (as amended, "CERCLA") or any other state or federal statute, (f) any bulk sales or similar Law, (g) any Tax statutes or ordinances, including, without limitation, the IRC, as amended, and (h) any and all theories of successor liability, including any theories on successor products liability grounds or otherwise.

34.    Except to the extent expressly included in the Assumed Liabilities or provided in the Purchase Agreement, the Buyer and its Affiliates shall have no liability, obligation, or responsibility under WARN or any state or other Law of similar effect or CERCLA, or any

foreign, federal, state or local labor, employment, or environmental Law by virtue of the Buyer's purchase of the Purchased Assets or assumption of the Assumed Liabilities.

35.     Except to the extent expressly included in the Assumed Liabilities or set forth in this Order, pursuant to Bankruptcy Code §§ 105 and 363, all Persons including, but not limited to, the Debtors, their estates, the Creditors' Committee, all debt holders, equity security holders, the Debtors' employees or former employees, Governmental Entities, lenders, parties to or beneficiaries under any Employee Benefit Plan, trade and other creditors asserting or holding a Lien of any kind or nature whatsoever against, in, or with respect to any of the Debtors or the Purchased Assets (other than the holders of Permitted Liens and Assumed Liabilities), arising under or out of, in connection with, or in any way relating to the Debtors or their estates, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Purchased Assets to the Buyer, shall be forever barred and estopped from asserting, prosecuting, or otherwise pursuing such Lien, including assertion of any right of setoff or subrogation, and enforcement, attachment, or collection of any judgment, award, decree, or order, against the Buyer or any Affiliate, successor or assign thereof and each of their respective current and former officers, directors, stockholders, employees, agents, representative, attorneys, investors, parents, predecessors, subsidiaries, successors, assigns, and affiliates, or the Purchased Assets.

36.     Without limiting the generality of the foregoing, the Buyer shall not assume or be obligated to pay, perform or otherwise discharge any workers' compensation debts, obligations, and liabilities of the Debtors arising pursuant to state Law or otherwise. This Order is intended to be all inclusive and shall encompass, but not be limited to, workers' compensation claims or suits of any type, whether now known or unknown, whenever incurred

or filed, which have occurred or which arise from work-related injuries, diseases, death, exposures, intentional torts, acts of discrimination, or other incidents, acts, or injuries prior to the Closing Date, including, but not limited to, any and all workers' compensation claims filed or to be filed, or reopenings of those claims, by or on behalf of any of the Debtors' current or former employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as well as any and all premiums, assessments, or other obligations of any nature whatsoever of the Debtors relating in any way to workers' compensation liability.

37.    Notwithstanding anything contained in this Order to the contrary, effective as of the Closing, (i) each Seller, on behalf of itself and its Related Parties (individually and collectively, the "Seller Releasing Parties"), fully, irrevocably and unconditionally releases Buyer, the DIP Lender, GP Investments, Ltd., and the Prepetition Secured Parties (for purposes of this Order, Prepetition Secured Parties shall have the meaning set forth in the DIP Order), and such entities' respective current and former affiliates, and such entities' and their current and former affiliates' current and former officers, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, managers, directors, equity holders, principals, members, employees, agents, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals (collectively, the "Released Parties"), each in their capacity as such, other than claims to the extent conveyed to (and released by) the Purchaser (individually and collectively, the "Released Parties"), from any and all actions, causes of action, damages, claims, refunds, choses in action, suits or proceedings, rights of recovery, rights of setoff, rights of recoupment, and demands whatsoever, in law or in equity, known or unknown, matured or unmatured, accrued or

contingent or liquidated, regardless of whether such rights are currently exercisable, whether derivative claims asserted or assertable on behalf of any of the Seller Releasing Parties or direct claims or for indemnification or contribution, including but not limited to any Claims under Bankruptcy Code § 506(c), that such Seller Releasing Parties (whether individually or collectively) ever had, now have, or may have against the Released Parties relating to, or in any manner arising from, in whole or in part, the Sellers, the Debtors, the Chapter 11 Cases, the DIP Loan Documents, the Prepetition First Lien Loan Documents, or the negotiation, formulation, or preparation of the Agreement, in each case, in connection with any event, conduct or circumstance occurring on or prior to the Closing; and (ii) the Buyer, the DIP Lenders, GP Investments, Ltd., and the Prepetition Secured Parties, on behalf of themselves and their respective Related Parties (individually and collectively, the "Releasing Parties") fully, irrevocably and unconditionally release each Seller and each of their respective Related Parties, each in their capacity as such (individually and collectively, the "Seller Released Parties"), from any and all actions, causes of action, damages, claims, refunds, choses in action, suits or proceedings, rights of recovery, rights of setoff, rights of recoupment, and demands whatsoever, in law or in equity, known or unknown, matured or unmatured, accrued or contingent or liquidated, regardless of whether such rights are currently exercisable, whether derivative claims asserted or assertable on behalf of any of the Releasing Parties or direct claims or for indemnification or contribution, that such Releasing Parties (whether individually or collectively) ever had, now have, or may have against the Seller Released Parties relating to, or in any manner arising from, in whole or in part, the Sellers, the Debtors, the Chapter 11 Cases, the DIP Loan Documents, the Prepetition First Lien Loan Documents, or the negotiation, formulation, or preparation of the Agreement, in each case, in connection with any event,

conduct or circumstance occurring on or prior to the Closing; provided, however, that the foregoing provisions shall not operate to waive or release: (i) rights to enforce the Purchase Agreement, the Ancillary Purchase Documents and the other agreements or instruments being executed and delivered pursuant to the terms of the Agreement to give effect to the Transactions, and (ii) all rights granted to CNB under the DIP Order, including those rights granted in paragraphs 4, 14 and 46 thereof relating the obligation of the Debtors to pay and minimize the workers compensation insurance liabilities and any related insurance premium financing obligations and those rights granted to CNB in paragraphs 12 and 37 thereof relating to payment of CNB's legal fees and the treatment thereof as administrative expenses.

38.     Subject to the terms of the Purchase Agreement, the Purchase Agreement and any related agreements and/or instruments may be waived, modified, amended, or supplemented without further action or order of the Court; provided, that any modifications or amendments are non-material.

39.     The failure specifically to include any particular provisions of the Purchase Agreement or any related agreements or instruments in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court, the Debtors, and the Buyer that the Transactions, the Purchase Agreement and any related agreements and instruments are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to the Closing.

40.     No bulk sale Law or any similar Law of any state or other jurisdiction shall apply in any way to the sale and the Transactions contemplated by the Agreement.

41.     [Reserved.]

42.     This Order and the Agreement shall be binding upon and govern the acts of all

Persons including, without limitation, the Debtors, the Debtors' estates, the Buyer, and each of their respective directors, officers, employees, agents, successors, and permitted assigns, any chapter 11 trustee hereinafter appointed for the Debtors' estates, any trustee appointed in a chapter 7 case if these Bankruptcy Cases are converted from chapter 11, any chapter 11 plan agent or trustee, liquidating agent or trustee, or any other agent or trustee charged with administering any assets of the Debtors or their estates, all creditors of each Debtor (whether known or unknown), the Creditors' Committee and its professionals, holders of Liens in or with respect to the Purchased Assets, filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other Persons who may be required by operation of Law,  the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets.

43.    The following provisions address the Sellers' Liquor Licenses:[3]

A.    Possession of any and all alcohol Inventory shall be surrendered to the Buyer at the earliest of (a) immediately following Closing where allowed by applicable law; (b) receipt by the Buyer of authorization from the applicable Governmental Entity where required by applicable law; or (c) receipt by the Buyer of the applicable Liquor License; provided, that, notwithstanding the foregoing, possession of such Inventory shall not be surrendered to the Buyer if doing so would violate applicable law in each applicable jurisdiction.

B.    To the extent any license or permit necessary for the operation of the Business at the Assumed Locations is not an assumable and assignable executory contract, the Buyer shall

---

[3]  Pursuant to Purchase Agreement, and as announced at the Sale Hearing, the Cherry Hill Liquor License is not being transferred pursuant to the Order and resolution of the Cherry Hill Liquor License shall be determined in connection with Cherry Hill Town Center Partners, LLC's Motion for Relief from the Automatic Stay (Doc. No. 263).

make reasonable efforts to apply for and obtain any such license or permit promptly after the Closing Date, and the Debtors shall cooperate reasonably with the Buyer in those efforts. All existing licenses or permits, including but not limited to the Liquor Licenses identified in the Purchase Agreement shall remain in place for the Buyer's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.

C.     With regard to the sale of alcohol at the premises subject to the Agreed Leases, pursuant to the Purchase Agreement, the Debtors and all other parties in interest shall cooperate fully with and support the Buyer in executing such applications and furnishing such documents as are necessary for the Buyer to obtain, in its name, a temporary new alcohol beverage license or transferred Liquor License. To the fullest extent allowed by applicable law, the Buyer may continue to operate at the Assumed Locations under existing ABC Licenses, state food service licenses, local occupational licenses, and any other licenses needed to operate at the premises subject to the Agreed Leases, with no interruption of the business conducted at the premises, until the ABC Licenses and other licenses and permits have been transferred to the Buyer, or new alcohol beverage licenses and other licenses and permits have been issued to the Buyer.

D.     To the maximum extent permitted by Bankruptcy Code § 525, no governmental unit may revoke or suspend any permit or license, including but not limited to Liquor Licenses, relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of the Debtors' chapter 11 cases.

44.     The following provisions address and resolve outstanding objections from certain parties in interest:

A.  <u>Chubb Companies</u>.  Notwithstanding anything to the contrary in the Motion, the Purchase Agreement, any list of Assumed Contracts or Assumption Notice, any document related to any of the foregoing or this Order, (a) nothing shall permit or otherwise effect a sale, an assignment or any other transfer at this time of (i) any insurance policies that have been issued by ACE American Insurance Company, ACE Property and Casualty Insurance Company, Agri General Insurance Company, Indemnity Insurance Company of North America, ACE Fire Underwriters Insurance Company and Federal Insurance Company (and together with each of their U.S.-based affiliates and successors and ESIS, Inc., the "Chubb Companies") and all program, collateral and security, claims servicing and other agreements, documents or instruments relating thereto (collectively the "Chubb Insurance Contracts"), and/or (ii) any rights, proceeds, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts, unless and until a further order is entered by this Court, at a subsequent hearing, or as submitted by agreement of the Debtors, the Buyer, CNB and the Chubb Companies, with the rights of the parties fully preserved pending entry of such further order; (b) nothing shall alter, modify or otherwise amend the terms or conditions of the Chubb Insurance Contracts; and (c) for the avoidance of doubt, the Buyer is not, and shall not be deemed to be, an insured under any of the Chubb Insurance Contracts, provided, however, that to the extent any claim with respect to the Purchased Assets arising from an occurrence or event prior the closing of the sale of the Purchased Assets by the Buyer that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Buyer any such insurance proceeds (each, a "Proceed Turnover"), provided, further, however, that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

45.     The stays imposed by Bankruptcy Rules 6004(h), 6006(d), and 7062 are hereby waived, and this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any Person obtaining a stay pending appeal, the Debtors and the Buyer are free to close under the Purchase Agreement at any time, subject to the terms of the Purchase Agreement. In the absence of any Person obtaining a stay pending appeal, if the Debtors and the Buyer close under the Purchase Agreement, the Buyer shall be deemed to have acted in "good faith" up through the Hearing and shall be entitled to the protections of Bankruptcy Code § 363(m) as to all aspects of the Transactions if this Order or any authorization contained herein is reversed or modified on appeal.

46.     The sale of the Purchased Assets to the Buyer outside of a plan of reorganization pursuant to the Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan or plan of reorganization of the Debtors. The Transactions do not constitute a *sub rosa* chapter 11 plan.

47.     The automatic stay provisions of Bankruptcy Code § 362 are vacated and modified to the extent necessary to implement the terms and conditions of the Purchase Agreement and the provisions of this Order, and the stay imposed by Bankruptcy Rule 4001(a)(3) is hereby waived with respect thereto.

48.     This Court shall retain jurisdiction to enforce the terms and provisions of this Order, the DIP Order and the Purchase Agreement (including, without limitation, all documents and instruments executed in connection with the Closing and the documents to be executed by Buyer in favor of CNB in respect of the Sale Closing Deliverable, collectively the "Ancillary Purchase Documents") in all respects and to decide any disputes concerning this Order, the DIP Order, the Purchase Agreement, or the rights and duties of the parties hereunder or thereunder

or any issues relating to the Purchase Agreement, the Ancillary Purchase Documents and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Agreed Lease Assignments, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of any and all Liens (except Permitted Liens and Assumed Liabilities).

49.    The provisions of this Order are non-severable and mutually dependent. The terms and conditions of the Purchase Agreement (including all schedules and exhibits thereto) constitute a single, integrated transaction and are mutually dependent and non-severable.

50.    As soon as practicable after the Closing, the Debtors shall file a report of sale in accordance with Bankruptcy Rule 6004(f)(1).

###

Attorney R. Scott Shuker is directed to serve a copy of this order on interested parties and file a proof of service within three (3) days of entry of the order.